VICTOR M. EISENBEISS, JR. *v.* JAMES HUBERT
JARRELL ET AL.

[No. 176, September Term, 1982.]

*Decided November 4, 1982.*

The cause was argued before WILNER, GARRITY and
ADKINS, JJ.

*Van S. Powers,* with whom were *Thomas F. Kennedy* and *Charles J. Goddard* on the brief, for appellant.

*Francis X. Quinn* for appellees.

WILNER, J., delivered the opinion of the Court.

On November 4, 1977, appellant Eisenbeiss was involved in a motor vehicle collision with a truck driven by appellee Jarrell and owned by appellee Avis. On October 31, 1979, he sued Jarrell and Avis in the Circuit Court for Prince George's County to recover for the injuries suffered by him in the accident.

In his Declaration, appellant asked for damages of $1,000,000. After the customary pretrial discovery, as a trial date was growing nigh, the matter was set in for settlement conferences before the court. The first such conference, before Judge Blackwell, was held on January 5, 1981. At that conference, appellant reduced his demand to $200,000 and appellees offered $37,500. Judge Blackwell evaluated the case at $100,000. Trial was then set for February 23, but, as Judge Blackwell noted in a court memorandum "[n]egotiations are continuing and a follow-up settlement conference is set for February 6, 1981. . . ."

The parties met again on February 6, before Judge Woods. At that conference, according to the court's memorandum of it, "[t]he demand was lowered to $100,000. The offer has not been increased from $37,500.00, but indications are that they would offer $50,000.00 to $60,000.00. It is unacceptable to Plaintiff." Trial was still scheduled for February 23, but, on February *25,* 1981, it was taken out of the assignment and rescheduled for March 1, 19*82,* a continuance of over one year.

The first recorded explanation for this unusual event came on August 31, 1981, when appellees filed in the proceeding a "Motion To Enforce Settlement." Appellees averred in their motion that

(1) As of February 20, 1981, appellant "through his counsel, had presented to the defendants, through their counsel,

a demand of settlement in the amount of [$75,000] in return for which [appellant] would execute a general release and [the case] would be marked as settled and dismissed with prejudice";

(2) On or about February 20, 1981, appellees, through counsel, "met the settlement demand and agreed to pay to plaintiff the sum of [$75,000]" and that appellant, "through his counsel, confirmed that the case was settled";

(3) Trial of the case was scheduled for February 23, 1981, but "[f]ollowing the agreement of the parties, all parties, through their respective counsel, released all witnesses who had previously been placed under subpoena";

(4) On or about February 22, appellant's counsel advised appellees' counsel that "[appellant] desired to proceed to trial notwithstanding the settlement of the case which had been reached two days before. Counsel for all parties were in agreement that a valid settlement had been effected and the case would not proceed to trial";

(5) On February 23, counsel and appellant met with Judge Jacob S. Levin to apprise the court of the recent events. "In the course of that chambers conference, counsel for all parties again reconfirmed the fact and terms of the agreed settlement, *but [appellant] apprised counsel and the Court that he had changed his mind, and that the [$75,000] settlement, which he had previously authorized and had not, prior to acceptance, been withdrawn, was no longer enough.*" (Emphasis supplied); and

(6) Appellees tendered a draft for $75,000 and a proposed release but appellant refused to accept the draft, execute the release, and dismiss the case.

Upon these averments, appellees asked the court to order appellant to endorse the draft and to execute the release and the dismissal tendered to him.

Appellant, through new counsel, answered the motion on September 14, 1981. His defense was "that he never authorized his attorneys . . . to settle the above referenced matter for the sum of $75,000.00 and that the Plaintiff herein never agreed to the sum of $75,000.00 as full and final settlement

of his claim against the Defendants herein as alleged in their Motion to Enforce Settlement." Appellant made no objection in his answer to the procedural device of a motion to enforce the alleged settlement agreement, as opposed to a separate action for specfic performance. Nor, at the hearing held on the motion was such a defense raised. Indeed, at one point, in response to a question from the court about the "mechanics" of the matter, appellant's counsel conceded: "I agree wholeheartedly with [appellees' counsel] that the Court certainly does have the authority here to enforce or to order an enforcement of the settlement agreement."

The court conducted an evidentiary hearing on the motion on December 17, 1981. Appellant's former counsel (Mr. Weil) and appellees' counsel both testified and confirmed that a settlement agreement had been reached as alleged in the motion, and that appellant had simply changed his mind after the agreement had been made and the witnesses released. Mr. Weil stated unequivocally that he had received authority from his client to make the demand of $75,000.[1] Appellees' counsel, in testifying about what occurred at the conference before Judge Levin, stated "as I recall it, [appellant] said that he had authorized Mr. Weil to accept, but now he didn't feel it was enough. . . ."

Upon this testimony, the court found as fact that counsel had the requisite authority to settle the case for $75,000 and that an agreement had been reached to settle for that amount. Accordingly, on December 24, 1981, it issued an order directing appellant to accept the $75,000 and execute a release, failing which appellees could deposit the $75,000 with the court clerk and have the case dismissed with prejudice.

---

1. Counsel averred his authority at least twice in his testimony. On recross examination, he stated:

"Q  Mr. Weil, concerning the $75,000, you have indicated, I believe in your prior testimony, that some point in time [appellant] had indicated that if he were able to get $75,000, you would settle the case, is that correct?

A  That's correct. He said that he authorized me to accept $75,000 in settlement."

Appellant responded to the order on January 21, 1982, with (1) an order of appeal, (2) a motion for reconsideration, (3) a motion to strike the December 24 order, (4) a motion to revise that order, (5) a motion to stay the effect of the order, and (6) a motion to set the order aside. A hearing was requested on all the motions. Notwithstanding the extant order of appeal, the court, on January 22, issued an order staying "the effect" of the December 24 order until "the matter for reconsideration is heard by the Hearing Judge." Such a hearing, on all the pending motions, was held on February 8, 1982, at which time the court denied all the motions. No further order was entered, however, revoking the January 22 stay of the December 24 order, or otherwise reinstating that December order, and no further order of appeal was filed.

In this appeal taken, we suppose, from the magically reinstated December 24 order, appellant complains:

"I. The enforcement of an alleged settlement agreement in the amount of $75,000.00 on motion by a party to a civil suit, when there was no written settlement agreement and the non-moving party a[ff]irmatively states that his attorney did not have express authority to compromise the claim for $75,000.00, violates Article 23 of Maryland's Declaration of Rights which guarantees that 'the right of trial by jury of all issues of fact in civil proceedings in the several courts of law in this State, where the amount in controversy exceeds the sum of Five Hundred Dollars, shall be inviolably preserved.'

\* \* \*

II. The enforcement of an alleged settlement in the amount of $75,000.00 on motion by a party to a civil suit, when there was no written settlement agreement and the non-moving party affirmatively states that his attorney did not have express authority to compromise the claim for $75,000.00, is improper because it does not conform with the requirements of the Maryland Rules of Procedure.

* * *

III. There was an error in the lower court when the trier of facts, sitting at a motion to enforce settlement hearing, ruled, based in part on the trier[']s prior knowledge of or contact with attorney witnesses who testified at the motion to enforce settlement proceeding.

IV. The affidavits of Beatrice E. Eisenbeiss and Victor M. Eisenbeiss, Jr. each of January 20, 1982, containing information important to the events surrounding the motion to enforce settlement hearing on December 17, 1981, are dispositive or material to the fact finding process of the lower court, with respect to the ruling by the lower court on the motion to enforce settlement.

V. The lower court, under Canon 13 of Rule 1231, had a duty or obligation to recuse itself from ruling on the motion to enforce settlement, when the lower court expressed what purported to be an apparent conflict with Rule 1231, Canon 13.

VI. A motion to enforce settlement is not an authorized procedure under the Maryland Rules of Procedure, or Maryland statutory or case law.

VII. The trial judge made a finding of fact which was dispositive of plaintiff's rights on the underlying tort, and in that the trial judge did so, the trial judge was bound to follow Rule 1231 Canon 13 as a trial rule, for the purposes of receiving evidence (testimony) and making rulings on that evidence."

Before addressing these various issues, we need to pause and consider a matter that appears to have been overlooked by the parties — namely, the propriety of the court's January 22 order staying the effect of the December 24 order and the consequent validity of all proceedings in the circuit court occurring thereafter. The precise question is whether the court had any jurisdiction to enter the stay *after* an appeal to this Court had been noted.

Two basic, and intermeshing, principles are involved here: (1) A party has thirty days in which to note an appeal from a final judgment; and once such an appeal is noted, as a general rule the trial court's jurisdiction over the matter is immediately suspended until the appeal is resolved; and (2) pursuant to Maryland Rule 625, a trial court has broad revisory power over its judgments for a period of thirty days. It is not uncommon for aggrieved litigants to do what appellant did here; *i.e.,* to seek both forms of relief by noting an appeal to us *and* requesting a striking or revision of the judgment by the trial court.

In *Tiller v. Elfenbein,* 205 Md. 14 (1954), the Court of Appeals recognized that the concurrent pursuit of both remedial forms would necessarily create a gray area in terms of the trial court's continuing authority, and it laid down the following rules in order to reconcile the conflict: (1) the filing of an appeal does not preclude the appellant from also seeking revision of the judgment in accordance with Maryland Rule 625; (2) nor does the filing of a motion for such revision extend the time for filing an appeal or preclude the mover from timely noting an appeal. However, (3) "unless the appeal is dismissed when the motion comes on for hearing, the appellant must elect between his motion and his appeal. If the appeal is dismissed before the hearing . . . the motion stands for hearing as though no appeal has been entered." 205 Md. at 21.[2]

It was implicit from *Tiller* that, if the appeal was *not* dismissed prior to the scheduled hearing on the motion, the trial court would have no authority to hear or act on the motion. That implication was made clear in *Visnich v. Wash. Sub. San. Comm.,* 226 Md. 589 (1961), where, in discussing *Tiller,* the Court said, at p. 590:

"[W]e confirmed our prior holdings to the effect that the trial court lacks authority to entertain a motion to revise a judgment if an appeal is pending, and

---

**2.** That, indeed, is what occurred in *Tiller,* and thus the trial court was held to have had the jurisdiction to consider an act upon the motion for revision.

further stated that unless the appeal is dismissed when the motion to revise the judgment appealed from comes on for hearing, the appellant must elect between his motion and his appeal."

*See also Gilliam v. Moog Industries,* 239 Md. 107, 112 (1965); *Housing Equity Corp. v. Joyce,* 265 Md. 570 (1972); *McGinnis v. Rogers,* 262 Md. 710 (1971).

The January 22 order was an obvious attempt to circumvent the required election. The court no doubt supposed that if the operation or effect of the December 24 order were stayed, there would be no final judgment, and thus appellant could proceed with his motions for revision without having to worry about pursuing his appeal. Such a supposition would have been well-founded if the stay had been ordered *before* appellant's appeal had been noted. *See Hancock v. Stull,* 199 Md. 434 (1952); *Hanley v. Stulman,* 216 Md. 461 (1958); *Brown v. State,* 237 Md. 492 (1965). *See also S. & G. Realty v. Woodmoor Realty,* 255 Md. 684, 692 (1969):

> "The cases make clear that one in the position of [appellant] must fish or cut bait. If he does not obtain a stay of the primary decree, he can appeal within thirty days of its date and still seek revision of the primary decree by the trial judge, provided that at the time the court acts on a timely motion for revision the appeal has been dismissed. . . . *Here the court acted on S. & G.'s petition for revision as S. & G. asked it to do and the court would have had no power to act had there been in effect when it did so an operative order of appeal."* (Citations omitted; emphasis supplied.)

Once the appeal was noted, however, the court lost its authority to stay or suspend the operation or effect of the judgment. This is clear from what the Court of Appeals said in *Bullock v. Director,* 231 Md. 629, 633 (1963), and again in *Lang v. Catterton,* 267 Md. 268, 282 (1972):

> "An appeal to this Court from a *nisi prius* court does not necessarily stay all further proceedings in

the trial court, nor does it strip said court of all power over the proceeding in which the appeal has been taken. The trial court may act with reference to matters *not relating to the subject matter of, or affecting, the proceeding;* make such orders and decrees as may be necessary for the protection and preservation of the subject matter of the appeal; and it may do anything that may be necessary for the presentation of the case in this Court, or in furtherance of the appeal. *But, when an appeal is taken, it does affect the operation or execution of the order, judgment or decree from which the appeal is taken,* and any matters embraced therein. *After the appeal has been perfected, this Court is vested with the exclusive power and jurisdiction over the subject matter of the proceedings, and the authority and control of the lower court with reference thereto are suspended."* (Emphasis supplied.)

Suspending or staying the "effect" of a final judgment after an appeal has been noted certainly affects "the subject matter of the proceedings." Such an order, if valid, would have the effect of divesting this Court of jurisdiction to entertain the appeal by annulling the finality of the judgment and thus would preclude appellate review. Rather than serving to protect and preserve the subject matter of the appeal, which the trial court is authorized to do, that kind of order only frustrates the appeal, which the court is clearly *not* authorized to do.

Accordingly, we conclude that the court had no authority to issue the order of January 22, and that such order was therefore a nullity. From this it follows that, as the appeal noted on January 21 remained extant, the trial court had no jurisdiction to act upon the spate of motions seeking revision of the December 24 judgment.

This brings us to the questions raised by appellant. Excising the rhetoric in them, it would appear that appellant is complaining about (1) the procedure employed to enforce the alleged settlement agreement, (2) the failure of

the judge hearing the motion to recuse himself, and (3) the findings made by the court. None of the complaints has merit.

Questions I, II, and VI relate, at least in part, to the propriety of using a motion such as that filed by appellees to enforce an alleged settlement agreement. The simple answer to them is that appellant never made such a complaint to the trial court, and he will not be heard to make it for the first time on appeal. Maryland Rule 1085; *cf. Clark v. Elza,* 286 Md. 208, 210, n. 1 (1979); *Kinkaid v. Cessna,* 49 Md.App. 18, 21, n. 3 (1981). *See,* moreover, *Eastern Environ. v. Industrial Pk.,* 45 Md. App. 512 (1980).

Cleared of their rhetorical verbiage, Questions I and II also attack the critical factual findings made by the court — that appellant authorized his attorney, Mr. Weil, to settle the case for $75,000, and that a settlement agreement for that amount was reached. Question IV, to some extent, also challenges those findings. The testimony of the two attorneys clearly supports the court's findings, however; and we therefore cannot say that they are clearly erroneous. Maryland Rule 1086.

Questions III, V, and VII suggest that Judge Levin, who heard and decided appellees' motion, had some duty under Maryland Rule 1231 to recuse himself. Not only was no request made of the judge to take such action, but, from the facts presented by appellant, we see no reason whatever why he should have done so. The Complaint, in our judgment, is frivolous.

> *Judgment affirmed; appellant to pay the costs.*