PAUL B. TAYLOR *v.* PATRICIA L. BENJAMIN and
VICTOR H. LAWS, Personal Representatives
of the Estate of J. William Benjamin

ET AL.

[No. 1752, September Term, 1982.]

*Decided October 5, 1983.*

The cause was argued before WEANT, BISHOP and ALPERT,
JJ.

*Robert E. Farnell, III,* for appellant.

*Alexander G. Jones,* with whom was *Victor H. Laws* on the brief, for appellees.

BISHOP, J., delivered the opinion of the Court.

Paul B. Taylor appeals the denial, on August 18, 1982, by the Circuit Court for Worcester County of his motion to modify or to set aside a judgment against him filed on August 24, 1981. Taylor also appeals an Order of January 19, 1983, directing that he pay over to the Clerk of the Court the fund which is the subject matter of the original judgment.

Appellant asks:

"1. Did the court abuse its discretion in denying the Motion to Modify or set aside Judgment?

2. Did the court err in granting Motion for Order Directing Paul B. Taylor to turn over assets?"

The following undisputed facts are taken from the joint motion for summary judgment filed by Peninsula Bank, one of the appellees, and

The Personal Representative of the Estate of J. William Benjamin, Deceased, the other appellee.

For a number of years prior to June 30, 1975, while William A. Reid was manager of Peninsula Service Bureau, Inc., ("PSB"), Taylor (the appellant) was employed by PSB to collect accounts due its customers. The accounts had been turned over to PSB for collection, and PSB had been unable by its own efforts to collect them. The standard financial arrangement between PSB and Taylor had been a three-way division of all net collections: 50% to the PSB customer whose account was collected; 25% to Taylor; and 25% to PSB. The term "net collections" meant principal plus interest collected, minus court costs advanced.

The accounts were referred to as "agency accounts" by Taylor, and his standard practice was to remit all funds collected to PSB, which then made the split or distribution on the basis described above.

On or about June 30, 1975, J. William Benjamin acquired the stock of PSB from Reid and others, and Benjamin took over the management of PSB. Benjamin and Taylor orally agreed to continue the same arrangements as before, and did so until approximately November or December of 1978, when PSB failed, closed its doors and went out of business. After this time Taylor was still making collections on 40 to 50 judgments which he had obtained on "agency accounts". He notified the owner of such accounts (the customers of PSB) by telephone that PSB had gone out of business, and that he (Taylor) would now make the collection distributions formerly made by PSB. There was no objection, and Taylor continued thereafter to make collections and made distributions exactly as before, 50% of net collections to the customer, and 25% to himself, *except* that he retained in escrow the remaining 25% which represented what PSB would have retained as its own compensation.

Taylor initially deposited all his collections in his attorney's "trust account", from which he distributed periodically 50% to the PSB customers and 25% to himself; periodically he withdrew the remaining 25% and deposited it in his name in a passbook savings account at Eastern Shore Savings and Loan Association. From that account he purchased from time to time Certificates of Deposit. He regarded and described all of these transactions and funds as "escrow" funds. The funds at the time of the motion for summary judgment amounted to approximately $22,000 to $25,000.

In addition Taylor had collected approximately $1,000 representing reimbursement for court costs advanced by PSB before it closed. He has used this "reimbursement fund" to advance further court costs for his own operation; the balance in that "reimbursement fund" was approximately $730 and was deposited in his attorney's trust account.

No change in the three-way split or compensation arrangement was ever suggested by Taylor to Benjamin or to any of the account owners after PSB closed, and no such change was ever suggested by any of them to him.

All of Taylor's collections since PSB closed had been collections on accounts reduced to judgment before PSB closed.

In their motion the appellees averred that the foregoing undisputed facts "make it clear that PSB or its successors in interest are entitled to all [of the] escrow funds . . . including the interest . . . and the 'costs reimbursement fund.'" Appellees in their motion further pointed out that:

"Decedent J. William Benjamin merged PSB into J W B Company, of which he also was sole stockholder; charters of both companies were forfeited prior to his death; Patricia L. Benjamin and Victor H. Laws are the surviving directors of both PSB and J W B Company, and entitled to the assets of both by statute; Patricia L. Benjamin and Victor H. Laws also are Co-Personal Representatives of decedent's estate and returned the stock of both companies as assets thereof in their inventory; accordingly, Patricia L. Benjamin and Victor H. Laws in their capacities as such Co-Personal Representatives and/or as surviving directors, are the successors in interest to PSB and are lawfully entitled to said funds for the account of the Estate of J. William Benjamin, Deceased."

Finally, the appellees asserted in their motion that when the funds are received by the Estate they should be impressed with the lien of Peninsula Bank as attaching creditor. By order of court dated August 21, 1981 and amended *nunc pro tunc* on August 24, 1981, summary judgment was entered against garnishee, Paul B. Taylor, in favor of the Personal Representative of J. William Benjamin, Deceased, and Surviving Trustee of Peninsula Service Bureau, Inc., and J W B Company. The order granting the summary judgment required a sworn and detailed accounting be filed within thirty days by Taylor, and that the funds be paid to the Personal Representative within ten days after the accounting became final and was certified by the court. The funds reaching the Personal Representative were "impressed and made subject to the specific lien of Peninsula Bank as judgment creditor and garnishor . . .".

Appellant filed a motion to modify or set aside the judgment of August 21-24, 1981, setting out as grounds that the question of the appellant's entitlement to the deposited 25% was unresolved because the court stated that it had not read the Taylor deposition; that there had been an objection to the last minute substitution of I W B Company and, therefore, the interest of I W B Company was an unresolved question of fact; that the order required appellant to perform services for persons not accepted as clients; that because of services appellant performed that had previously been performed by PSB, he should be compensated by the award of the entire fund; that there was a dispute whether a corporate meeting of I W B Company ever took place, that the court erred in ruling that appellant's entitlement to the fund had never been raised; that the order requiring transfer of the fund should be stayed and, finally, that appellant would be willing to turn the funds over to the clerk of the court *pendente lite.*

On September 8, 1981, appellant filed his motion to modify or set aside the judgment of August 21-24, 1981. On September 24, 1981, the trial court summarily denied appellant's motion. An appeal was filed to this Court from the denial of the motion. By a *per curiam* opinion dated June 4, 1982, (No. 1320 S.T. 1981) we reversed and remanded because the trial court failed to hold a hearing before its denial of appellant's motion. On August 18, 1982, after holding the mandated hearing, the trial court again denied appellant's motion. On August 25, 1982, that order was appealed to this Court; it is the subject matter of the first question raised.

*1.*

It is clear, and both parties agree, that in reviewing the denial of a motion to modify or set aside a judgment we determine only whether the trial court abused its discretion. *Cromwell v. Ripley,* 11 Md. App. 173, 176-77 (1971); *Weaver v. Realty Growth Investors,* 38 Md. App. 78, 82 (1977). Also

it is clear to this Court that there is not one iota of evidence to indicate any abuse of discretion by the trial court in its denial of the motion to modify or set aside judgment.

## 2.

Appellant argues that the circuit court erred in ordering him to turn over to the clerk of the court those assets that represent the subject matter of the suit. He argues that the order, which purportedly amended the judgment of August 24, 1981, exceeded the court's jurisdiction by granting additional relief while his appeal was pending before this Court. Appellant cites *Eisenbeiss v. Jarrell,* 52 Md. App. 677 (1982), to support his position that, in the absence of facts showing the assets to be in danger, the trial court lacked jurisdiction to grant the motion to turn over the funds. *Eisenbeiss* cited and quoted with approval *Bullock v. Director,* 231 Md. 629, 633 (1963) and *Lang v. Catterton,* 267 Md. 268, 282 (1972) which stated:

> "An appeal to this Court from a *nisi prius* court does not necessarily stay all further proceedings in the trial court, nor does it strip said court of all power over the proceeding in which the appeal has been taken. The trial court may act with reference to matters not relating to the subject matter of, or affecting the proceeding; make such orders and decrees as may be necessary for the protection and preservation of the subject matter of the appeal; and it may do anything that may be necessary for the presentation of the case in this Court, or in furtherance of the appeal." (Emphasis added.)

We see nothing in these cases requiring evidence that the assets be in danger. As appellee correctly notes the trial court could take judicial cognizance that the funds held by appellant could be lost in various ways. *See generally Smith v. Hearst Corp.* 48 Md. App. 135 (1981).

Although the court couched its order in terms that would indicate it was modifying the original judgment, it could have reached the same result by simply issuing an order directing that the assets be paid over to the clerk. We will not let the form of the order undermine its substance.

We hold that the turnover order did not relate "to the subject matter of, or [affect] the proceedings." Rather, it was based on the necessity to protect and preserve the subject matter of the appeal.

On January 19, 1983, when the contested order was signed, this case had been pending since June 1, 1980, a period of two and one-half years; the judgment had been filed on August 24, 1981, almost one and one-half years before, and the appellant was still holding the funds in his individual name. The trial court acted to protect and preserve the assets, and such action does not relate to or affect the subject matter of the appeal. The court's action is clearly distinguishable from the granting of the motion to stay an order of court, which was the situation in *Eisenbeiss.*

*Judgment affirmed.*
*Costs to be paid by appellant.*