587 A.2d 1133

**John ROCK**

v.

**Priscilla M. ROCK.**

No. 774, Sept. Term, 1990.

Court of Special Appeals of Maryland.

April 1, 1991.

600

J. Alan Galbraith (William & Connolly, on the brief), Washington, D.C., for appellant.

Suzy Eckstein (Harvey A. Jacobs and Belli, Jacobs, Weil, Jacobs & Grozbean, on the brief), Rockville, for appellee.

Argued before BLOOM and ROSALYN B. BELL, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned).

ROSALYN B. BELL, Judge.

While a plethora of issues and sub-issues are raised in this domestic case, they all involve money and alleged abuse of discretion. Specifically, the issues cover the award of indefinite spousal support, the amount of child support, the amount of the monetary award, the award of a portion of the proceeds from the sale of automobile kits, and denial of post judgment motions. Since we find no abuse of discretion, we will affirm, except on the issue which deals with an interest in the sale of automobile kits. On that issue, we will reverse and remand.

John and Priscilla Rock's relationship began in 1977 when they decided to live together. They separated for about a nine-month period after Mr. Rock was transferred to the Washington, D.C. area. They married on October 24, 1980 after Ms. Rock came to the same area. Beginning in 1981, Christopher, Mr. Rock's son by a prior marriage, also lived with them in the home owned by Mr. Rock. Christopher drowned in an accident on July 4, 1983. Later, two children were born of the marriage, Morgan, born July 31, 1984, and Kathryn (Katie), born October 26, 1986. Ms. Rock worked outside the home until Christopher came to live with them. At that time, she became a full-time wife and mother at Mr. Rock's behest. Since then, she has had employment outside the home, but only for short periods of time.

Ms. Rock filed a suit in the Circuit Court for Montgomery County for a limited divorce in November of 1985, alleging desertion and a course of conduct undermining her health.

Ms. Rock amended her complaint in July of 1986 and Mr. Rock left the marital home on September 25, 1986. On October 9, 1986, the court entered a pendente lite order for $1,500 per month spousal support and $800 per month for child support.

Pursuant to an order of referral from the circuit court to the Domestic Relations Master under Rule 2–541, and based on a third amended complaint filed February 23, 1989, a Domestic Relations Master conducted a merits hearing on March 20, March 21, May 19 and May 22, 1989. After the Master made his proposed recommendations, Mr. Rock filed a Notice of Intent to Except. On September 22, 1989 the Master filed his report, recommending indefinite spousal support to Ms. Rock commencing August 1, 1989 of $1,500 a month and child support of $860 per month per child. The Master also recommended attorney's fees for Ms. Rock of $10,000 and suit money of $3,000, judgment for a monetary award of $53,000, payable at $10,000 a year for five years and $3,000 payable the sixth year, and an award to Ms. Rock of a one-third interest in the marital portion of the Allied Signal Vested Retirement Benefits Plan of $16,-142.23, when and if received. The distribution of these retirement benefits was to be effected by a qualified domestic relations order (QDRO). The proposed order also recommended "a one-third interest in the funds received by the defendant from the sale of the automobile kits which [Mr. Rock] receives resulting from his sale of Marauder, Inc. to Mansour Akhavain, payable if, as and when received by" Mr. Rock.

Exceptions were filed as well as an opposition and a response. On October 25, 1989, an immediate order was filed covering child support retroactive to August 1, 1989 of $860 per month per child. A circuit court judge conducted a hearing on December 19, 1989 and took the matter under advisement. The hearing judge denied the exceptions on February 26, 1990 and entered judgment granting the relief recommended by the Master. Mr. Rock moved to alter or

amend the judgment or for a new trial which was denied April 11, 1990. This appeal followed.

## MOTION TO STRIKE

■ Ms. Rock moved to strike a portion of Mr. Rock's brief. The motion arose out of a stipulation reached by the parties during the trial. For reasons not clear and undoubtedly irrelevant to the present motion, midway through the merits hearing, the parties stipulated that fault was not to be taken into account in determining spousal support and the monetary award. In his brief, Mr. Rock contested the award to Ms. Rock of indefinite spousal support. He argued that this case differs from the cases cited by the Master in support of indefinite spousal support in that Ms. Rock did not invest her life in the marriage and the marriage did not "break up due to fault by Mr. Rock." Ms. Rock contends this reference to fault violates the stipulation. Mr. Rock counters that there is no violation because the statement does not raise Ms. Rock's fault in connection with the break-up of the marriage as a bar to spousal support. Rather, it merely attempts to distinguish her situation from the cases cited by the Master in support of indefinite spousal support and points out the absence of fault by Mr. Rock. Since the basis of the distinction he seeks to draw includes the very core of the stipulation, namely, that fault was not to be considered, Mr. Rock's position is untenable.

The stipulation of the parties to exclude fault as a consideration covered both parties. We do not know if Mr. Rock was at fault as that consideration was taken from the case. The Legislature has removed fault as an automatic bar to spousal support. Md.Fam.Law Code Ann. § 11–103 (1984). The Legislature did make the circumstances contributing to the estrangement a factor in granting alimony in lieu of the relatively modern common law doctrine which precluded spousal support where the one seeking support was at fault. Md.Fam.Law Code Ann. § 11–106(b) (1984). We do not know those circumstances as counsel then tried the case

as though the stipulation applied both to fault and the circumstances leading to the estrangement. Hence, the comment sought to be struck was not only a violation of the stipulation, it was a statement outside the record. We grant the motion to strike.

## THE REPLY BRIEF

■ On January 23, 1991, Mr. Rock filed a reply brief. Rule 8–503(d) provides, in pertinent part, that "[a]ny reply brief filed by the appellant shall not exceed 15 pages in the Court of Special Appeals...." Mr. Rock's reply brief contains 30 pages. Sanctions for failure to comply with the requirements of Rule 8–503 are provided in subsection (g):

> "For noncompliance with this Rule, the appellate court may dismiss the appeal or make any other appropriate order with respect to the case, including an order that an improperly prepared brief be reproduced at the expense of the attorney for the party for whom the brief was filed."

We deem it unduly harsh to dismiss this appeal. We do, however, in the exercise of our discretion, strike the reply brief and decline to consider it.

## SCOPE OF REVIEW

■ We have often discussed the deference to be accorded the Master on findings of facts. This deference was discussed in *Wenger v. Wenger*, 42 Md.App. 596, 607, 402 A.2d 94 (1979), and more recently in *Levitt v. Levitt*, 79 Md.App. 394, 398, 556 A.2d 1162, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989), in which we said:

> "Deference will be accorded to the facts as found by the Master, but this only applies to 'first-level' facts. First-level facts are those that answer the What?, Where? and How? questions. Deference is not accorded to 'second-level' facts or to recommendations.... Second-level facts are conclusions and inferences drawn from first-level facts. A first-level fact would be that one or both parents used drugs. A second-level fact would be that

that use did or did not affect [the child]. A recommendation would be a change or lack of change of custody." (Citation omitted.)

The decisions on such matters as (1) whether to award spousal support, (2) the amount of that support, (3) to whom to award custody, (4) the amount of child support, (5) whether to make a monetary award, (6) the amount of that award, (7) whether to enter a use and possession order, (8) the length of the use and possession order, and all other conclusions are solely within the prerogative of the trial judge. The trial judge may accept or reject the recommendations of the Master on these matters, but must exercise his or her own independent judgment in reaching those conclusions. *Ellis v. Ellis*, 19 Md.App. 361, 365, 311 A.2d 428 (1973). Decisions resulting from that independent judgment are to be reviewed by us and reversed only if they do not conform to the law or constitute an abuse of discretion. Under these circumstances, proper appellate discipline mandates that we affirm those decisions regardless of whether we would have made the same disposition provided those decisions were based on fact finding that was not clearly erroneous and the orders were not an abuse of discretion.

We will, where appropriate, attempt to distinguish between the first-level facts to which the trial judge was required to grant deference and second-level fact finding and decisions to which the trial judge was required to exercise his independent judgment.

## SPOUSAL SUPPORT

Mr. Rock has raised a long list of reasons why the trial judge erred in adopting the Master's recommendation of indefinite spousal support. The principal reasons appear to be the short-term nature of the marriage, the respective ages of the parties and the ability of Ms. Rock to be self-supporting, and the claim that the standards of living are not likely to be unconscionably disparate. Mr. Rock also contends he has a lot of debt while Ms. Rock is

relatively free of debt and what debt she accumulated resulted from her poor management.

Mr. Rock received $138,546.69 in income in 1988. During 1988, Ms. Rock maintained herself and the two children on $27,600. Her rent and utilities payments alone exceeded $12,000 per year. We find it hard to see how she could have also managed clothes for the children and food on the table without a little debt. While the factors cited by Mr. Rock, together with many others including ability to pay, are all relevant to the amount and period of support, they are not relevant to his complaint, except for the claim of lack of disparity in standard of living. Mr. Rock does not argue that no spousal support is appropriate; he attacks the indefinite nature of the award.

## INDEFINITE SPOUSAL SUPPORT

The purpose of spousal support is to provide the means whereby both parties may deal with their new, unmarried lives and to provide an opportunity for the recipient to become self-supporting. Under some specific circumstances, the Legislature has added yet another purpose. Indefinite support is justified where circumstances are such that it is unlikely that the recipient will ever become economically self-sufficient or where unconscionable disparate living standards would exist. *Turrisi v. Sanzaro*, 308 Md. 515, 525, 520 A.2d 1080 (1987); *Wassif v. Wassif*, 77 Md. App. 750, 551 A.2d 935, *cert. denied*, 315 Md. 692, 556 A.2d 674 (1989).

In *Wassif*, Judge Moylan, speaking for this Court, opined 77 Md.App. at 755, 551 A.2d 935:

"The purpose of alimony is to provide financial support to an economically dependent spouse until that spouse becomes self-supporting. Md.Fam.Law Code Ann. § 11–106(c)(2) provides, however, that the court may award alimony for an indefinite period under certain circumstances:

'(c) *Award for indefinite period* —The Court may award alimony for an indefinite period, if the court finds that:

\* \* \* \* \* \*

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.' "

 Indefinite support may be warranted where it would be impractical to expect the economically dependent spouse to become self-supporting through further education or training or where rehabilitative spousal support for a limited period of time would result in gross inequity. *Holston v. Holston,* 58 Md.App. 308, 321–22, 473 A.2d 459 (1984).

In the instant case, the Master made the following findings of fact:

"In the instant case Priscilla Rock is thirty-three years of age and has twenty-two credits towards a college degree. The parties have been married since 1980. She has a limited employment history and has never held a position which paid more than $24,000.00 per year. Her last job at Bynon Associates paid $15,000.00. The testimony of Tamela Bynon of Bynon Associates clearly indicated that the plaintiff while showing enthusiasm, clearly was not qualified and possessed limited technical knowledge. When she earned $24,000.00 she was required to travel. She cannot travel now because of the need to care for her children. She is presently unemployed. There was little if any evidence that she is capable of not only earning more than she has in the past, but there was clearly no evidence that she could ever come close to earning what the defendant earns and has earned in the past. In 1985, the defendant earned $173,907.00, in 1986 he earned $108,695.00, in 1987 he earned $125,881.47 and in 1988 he earned $138,546.69. His present salary is

$98,940.00. His past earnings record as well as his obvious skills and background insure that he will continue to earn as much or more than his past earnings. Clearly, even after Priscilla Rock makes maximum progress towards being self-supporting, the respective standards of living between the plaintiff and defendant will be unconscionably disparate."

This last statement is clearly a second-level finding and the trial judge was not required to give such a finding deference. He did, however, adopt that conclusion and there are ample first-level facts to support it. Moreover, those first-level facts as found by the Master were supported by sufficient evidence.

The Master further found:

"Moreover, the defendant has earned a substantial bonus over the past years and there is no reason to anticipate that he will not continue to earn a like bonus. His most recent bonus, or compensation award in 1989 was $29,700.00 . . . .

"When the parties were married they enjoyed a comfortable lifestyle. They lived in a home in Potomac, they had plenty of income and cash available to them, both the plaintiff and defendant engaged in the defendant's avocation of refurbishing and designing automobiles and the defendant spent abundant sums in furtherance of this endeavor. They had no car payments, they sailed frequently and they belonged to a polo club. Their home had five bedrooms and three fireplaces and was located on a one acre parcel."

The Master next concluded:

"It is impractical to expect the plaintiff to ever approach this standard of living and to approach the standard of living which the defendant enjoys and will enjoy in the future with his substantial income and earning capacity."

Again, this is a second-level fact, but amply supported by the Master's first-level fact finding which, in turn, was

amply supported by the evidence. Hence, we cannot hold that the trial judge erred in adopting that conclusion.

The appellate courts have considered the award of indefinite spousal support in a substantial number of cases. The failure to award indefinite spousal support has only been reversed in two published cases: *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984), and *Wassif v. Wassif*, 77 Md.App. 750, 551 A.2d 935 (1989). In *Holston*, 58 Md.App. at 323, 473 A.2d 459, the wife's potential income was estimated to be only 15 percent of that of the husband. In *Wassif*, 77 Md.App. at 757, 551 A.2d 935, the wife's potential income was only about four percent.

In *Benkin v. Benkin*, 71 Md.App. 191, 524 A.2d 789 (1987), the wife's potential earnings were 16 percent. While the Court in *Benkin* reversed on other grounds, it did direct the trial court to reconsider the failure to award indefinite spousal support. In *Rogers v. Rogers*, 80 Md.App. 575, 565 A.2d 361 (1989), the Court reversed based on the failure to award any spousal support. No finding had been made in *Rogers* on the wife's potential income. The husband's earnings, however, were in excess of $9,000 per month and her highest annual salary had been $17,500. *Rogers*, 80 Md. App. at 592, 565 A.2d 361. The Court commented that based on these earnings it "would seem, therefore, that a gross disparity in income, which ordinarily translates into a gross disparity in standards of living, would be an unconscionable disparity." *Rogers*, 80 Md.App. at 591, 565 A.2d 361. In *Melrod v. Melrod*, 83 Md.App. 180, 574 A.2d 1 (1990), we reversed for a reason other than the failure to award indefinite spousal support. We remanded and pointed out that, unless the monetary award was revised to provide Ms. Melrod with a great deal of income, "the disparity in income and, therefore, standards of living, [would] be far greater than we held to be unconscionable" in *Holston* and *Rogers*. *Melrod*, 83 Md.App. at 196, 574 A.2d 1. These comments suggest, while not directing, that indefinite support would be appropriate under the circumstances of *Benkin, Rogers* and *Melrod*.

This Court has also approved the award of indefinite spousal support where the disparity was far less than the disparity in *Holston* and *Wassif.* In *Kennedy v. Kennedy,* 55 Md.App. 299, 307, 462 A.2d 1208 (1983), indefinite spousal support was awarded where the wife's income was 34 percent of the husband's. In *Bricker v. Bricker,* 78 Md. App. 570, 577, 554 A.2d 444 (1989), where the wife's income was 35 percent of the husband's income, the court awarded indefinite spousal support. In *Broseus v. Broseus,* 82 Md. App. 183, 196, 570 A.2d 874 (1990), the percentage was 34.9 percent; and in *Zorich v. Zorich,* 63 Md.App. 710, 717, 493 A.2d 1096 (1985), it was 20 percent.[1] This Court has yet to reverse an award of indefinite spousal support in a published opinion on the basis that the finding of unconscionable disparity was clearly erroneous.

On the other hand, we have affirmed cases where the trial judge has refused to award indefinite spousal support where similar disparities in income were projected. For instance, in *Green v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985), the trial court projected Ms. Green's full earning potential plus her income from the monetary award would amount to 22 percent of that of Mr. Green.

Our approval or denial of these awards clearly indicate the importance we place upon the judgment and discretion of the fact finder in evaluating and weighing the evidence and determining all the facts and circumstances in making these very important decisions. Admittedly, under the Master system, the division of fact finding and decision making sets up a dichotomy in which the person judging the credibility of the evidence and the person making the ultimate decisions are separated. Moreover, if the judge merely adopts the Master's recommendations without hearing the

---

1. In *Blake v. Blake,* 81 Md.App. 712, 727–28, 569 A.2d 724 (1990), we upheld an award of indefinite spousal support where the economically dependent spouse earned 47.6 percent of the income of the economically independent spouse. Since the trial judge found the payee spouse would not become self-supporting, we did not need to deal with whether the disparity was unconscionable.

testimony or rendering an opinion, we cannot evaluate his or her reasoning in reaching the decision, or base our decision upon the trial judge's ability to see and judge the witnesses. While this is somewhat of a glitch in the process, we know of no simple way to remove the dichotomy, short of a total revision of the Masters' system, their role or status. Nevertheless, the presence of that dichotomy does not permit us to substitute our judgment for that of the trial judge where he or she has not abused his or her discretion. Unless the record is clearly to the contrary, we assume the trial judge knew and followed the law. *Campolattaro v. Campolattaro*, 66 Md.App. 68, 79, 502 A.2d 1068 (1986).

Mr. Rock does not estimate or project Ms. Rock's income. Even if we assume she could make as much as $30,000 per year, that would only be 21.7 percent of Mr. Rock's 1988 income of $138,546.69. In keeping with our prior decisions, this difference in income is substantial enough to uphold an award of indefinite spousal support. Additionally, Mr. Rock complained that his current position would not continue. We do not know what efforts he has made to find comparable work. Certainly, it is not inappropriate to infer, as did the Master and trial judge, that he could find a comparable situation. Past earnings are the best evidence of future earnings, absent some specific showing to the contrary. By the same token, Ms. Rock's past earnings give little indication that the living standards of the parties will be anything other than unconscionably disparate. Moreover, if his income were reduced to $100,000, Ms. Rock would still only earn 30 percent of his income. As we have said, grossly disparate income ordinarily translates into grossly disparate standards of living. *Rogers*, 80 Md.App. at 591, 565 A.2d 361.

Mr. Rock also protests that during the marriage, despite their income and location of their house in Potomac, they did not enjoy a high standard of living. The unconscionable disparity that occurs after the dissolution of the marriage is

at issue, and not necessarily the standard of living during the marriage.

Mr. Rock also claims the Master and later the trial judge arbitrarily reduced his expenses which were documented by a computer printout. Because those expenses were documented by a computer printout, from his point of view, those figures were "sacrosanct." This Court has rarely seen a financial statement in a domestic case that does not list expenses that show amounts that the trier of fact finds to be unreasonable. Just because figures appear on a computer printout, or are backed up by receipts or checks, does not make the amounts reasonable. The reductions as suggested by the Master provide higher allowable expenses for Mr. Rock alone than for Ms. Rock and the two children together. The Master, as well as the hearing judge, concluded that the disparity of income would not change. We cannot say the award of indefinite spousal support to Ms. Rock was clearly erroneous.

In a parting shot, Mr. Rock contends there is no evidence that Ms. Rock relinquished any career opportunities to further Mr. Rock's career. We find the suggestion in poor grace. While no finding was made on the subject and the issue was not raised at trial, when a parent leaves the work force to remain at home with children, as did Ms. Rock with Mr. Rock's son and their two daughters, that parent's career is not advancing and reentry into the work force is far from easy. This is particularly true in a fast-changing technical field such as Ms. Rock's field of computer technology.

## CHILD SUPPORT

Mr. Rock complains that the increase in child support from $800 per month for one child to $1,720 per month for two children doubled the child support and was improper because Ms. Rock introduced no evidence of a material change in circumstances.

■ The child, Katie, was not even born when the $800 figure was established. But even if we assume an allowance was made for Katie, as her birth was imminent, her needs had increased by the time of trial as had those of Morgan, who was then attending grade school. Mr. Rock's argument, however, indicates a basic misunderstanding of Maryland law. We have held that the change in circumstances requirement is not applicable in establishing a final award after a pendente lite order. *Payne v. Payne,* 73 Md.App. 473, 481, 534 A.2d 1360, *cert. denied,* 312 Md. 411, 540 A.2d 132 (1988).

Mr. Rock again argues, as he has at each turn, that he was on a salary continuation and hence his income should be considered to be lower than it really was, although he never suggested what it should be. We reiterate. The Master found Mr. Rock's current gross monthly wage was $8,245 with an additional $200 per month income, and that his most recent bonus was $29,700. Mr. Rock does not dispute this. Based on his past earnings, the Master then concluded there was no reason to anticipate that he would not continue to earn a similar bonus or comparable income in the future. In denying the exceptions, the trial judge adopted these second-level facts. We cannot say he erred.

Mr. Rock also complains that it was error to include the special monthly school fee for Katie of $308.33 on a permanent basis because Katie was not going to the school in the fall of 1989. First, we do not know what counsel means by "permanent." The school fee was a projected expense and if and when she no longer needs preschool or goes to a public school, the amount of child support may well be subject to modification. Second, the fact that Katie was not going to that particular school could have had something to do with the fact that when it was time to start school, Mr. Rock was still only paying the $800 per month for both children. Katie is, however, going to a school and no evidence was introduced that this school cost less. Since it was a specifically added item, if it is less, it may be subject to modification upon application.

■ Mr. Rock next complains that no earned income was attributed to Ms. Rock for purposes of establishing child support. He claims income should have been attributed to her because, although she had expressed an interest and need to go to school, she had not done so. We fail to see how she had the time or the resources to attend school, given the child care situation and the costs of any schooling. We find it interesting that during the marriage Mr. Rock wanted Ms. Rock to stay at home to look after the children, but once he no longer had complete control of the family, he decided Ms. Rock should leave the care of the children to others and work outside the home. He expects this despite the poor health of one child, the obvious need for transportation and child care for both if she worked outside the home, and Ms. Rock's demonstrated inability at this time to retain economically viable employment.

Ideally, these two adults should be able to discuss the full panoply of needs of the children and balance the salary potential of Ms. Rock against those added monetary needs and personal needs if she is employed outside the home and come up with a solution that would focus on the children. Barring the occurrence of that unfortunately unlikely event, Ms. Rock will need to balance those needs alone, realizing that the present situation may well have to give way to entrusting the children to others so that she can contribute to their expenses. We do not conclude that the trial judge abused his discretion in putting that day off as Katie was only three and Morgan, five.

## MONETARY AWARD

### —Marital Debt—

Mr. Rock complains that the Master failed to deal properly with marital debt, which he claims were accumulated (1) by purchasing assets which are no longer in existence, namely, to finance a bad automobile investment; (2) by discharging obligations incurred by Ms. Rock; and (3) for family expenses. He also contends the debts that existed at

the time of the separation should be grossed up by his tax rate, as he paid them out of after-tax dollars. On this latter point, we merely comment that, since he has paid them out of marital funds, they are no longer an issue.

—Savings and Stock Ownership Plan—

█ Mr. Rock contends the Master misvalued his premarital and post-marital portion of his Systems Development Corporation Savings and Stock Ownership Plan. He claims Ms. Rocks' actuary did not take into account that his post-marital contributions did not vest and the post-marital contributions were paid with premarital funds, making the marital portion $1,980 and not $15,761.

Mr. Rock valued his own plan, using his own assumptions. Ms. Rock brought in an actuary to testify on the value of the plan. It is apparent that the Master found Mr. Rock had presented self-serving data. The Master expressed this when evaluating the two opinions and found that the "testimony of the actuary is more credible and finds as a fact that the marital portion or percentage is 44.04%." While again this is second-level fact finding, the Master had ample evidence on which to base this finding. The Master simply did not agree with Mr. Rock's evaluation, but did agree with the expert. We find no abuse of discretion by the trial judge in accepting the actuary's opinion as opposed to Mr. Rock's.

—Child Support Credit—

█ Mr. Rock also claims he was entitled to a credit[2] for child support because he was providing all their support as Ms. Rock's only income came from him and Ms. Rock refused to sign the IRS form to enable him to take the children as deductions. The short answer is, she was under no duty to sign the IRS form, giving him the right to take

---

**2.** Mr. Rock does not say what he means by that credit. We assume, without being certain, that he means he is entitled to deduct the amount of tax he would have saved if he had taken the children as deductions from the amount he is required to pay for child support.

the children as a deduction. The longer answer is that he was entitled to deduct the spousal support he was paying her on his tax return. While her income from the spousal support was $1,500 a month, she was clearly living on credit, as the unreimbursed family medical bills and credit card obligations were substantial. She contended the expenses for the children were over $3,000 a month and she was paying more than one-half of their support. Mr. Rock's argument is without merit and obviously flawed. His position is, since the spousal support comes from him as does the child support, he should be able to deduct both the spousal support and receive the dependency deduction for the children. We disagree and hold he was not necessarily entitled to a credit for the child support.

—Dissipated Assets—

Mr. Rock complains that the Master improperly included dissipated assets as the basis for the monetary award. He is particularly concerned about treatment of the dissipated assets by the Master and the treatment of Allied Signal Savings Supplemental Non Qualified Savings Plan for Executive Employees.

In *Sharp v. Sharp*, 58 Md.App. 386, 401, 473 A.2d 499 (1984), this Court said:

"Dissipation may be found where one spouse uses marital property for his or her own benefit for a purpose unrelated to the marriage...."

Further, in *Sharp*, citing *Levin v. Levin*, 166 Md. 451, 453, 171 A. 77 (1934), the Court stated:

"[W]here a chancellor finds that property was intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award, such intentional dissipation is no more than a fraud on marital rights, and the chancellor should consider the dissipated property as extant marital property ... to be valued with the other existing marital property. This principal would apply even where the dissipated property cannot be recov-

ered because it is in the hands of a purchaser who took in good faith, without notice and for value."

*Sharp*, 58 Md.App. at 399, 171 A. 77.

▮ Mr. Rock admitted that he disposed of and/or dissipated assets that were being considered by the court in determining a monetary award. The trial of this matter began on March 29, 1989 and between that date and the completion of the testimony on May 22, 1989, Mr. Rock had disposed of assets that were before the court. Mr. Rock admitted in a deposition dated March 15, 1988, and at trial, that he had disposed of almost all of his assets and that all major assets of the marriage were in the sole name of Mr. Rock.

Specifically, he admitted that he liquidated the following assets between the March and May hearing dates:

| | |
|---|---:|
| Allied Savings Plan | $11,000 [3] |
| Paine Webber Account | 232 |
| IRAs Sovran Bank | 9,127 |
| Other | 2,520 |
| | $22,879 |

These funds were allegedly used for the following expenses of Mr. Rock: an old bill owed to Potomac Village School, estimated taxes for liquidation of funds, psychiatric counseling for an adult daughter of a prior marriage, a headstone for his deceased son, Christopher, and to pay off a credit line which accumulated post-separation. Ms. Rock alleged that Mr. Rock was engaging in a pattern of disposing of marital assets in order to keep her from receiving a monetary award.

Specifically, Ms. Rock claimed part of the funds were spent on a grave marker. His son, Christopher, died July 4, 1983. In March 1989, he called his first wife to tell her he was sending her a $1,800 check for a grave marker. By

---

3. Mr. Rock admitted in his testimony that he had withdrawn approximately $11,000 from the Allied Savings Plan. Ms. Rock claims that the actual amount was $11,596. We cannot, however, confirm this figure.

this time, the son had been dead almost six years. He told her he wanted to pay for the marker and also to take care of an old bill for his daughter's therapy and her college education which would be $14,000 a year. He called her on May 21, 1989 and he told her he was sending her the check and to cash it immediately. She ultimately received the check, but only the day before her testimony. She testified that he told her he wanted to make these payments "because [Ms. Rock] was going to get the money anyhow." Mr. Rock denied stating to anyone that he was disposing of his assets so that Ms. Rock would not get anything, but the testimony of his former wife belied that denial.

Mr. Rock admitted that approximately $4,737.22 of the $22,879 was for nonmarital obligations. The Master was not persuaded by Mr. Rock that the balance was used for family expenses.

Mr. Rock also claims that, since Ms. Rock did not show the assets were wasted on lavish living or a girlfriend, they must have been spent legitimately. He failed to establish, however, how the funds that were converted were utilized for family expenses. Even if some were so spent, this would have left him with his regular earnings to use as discretionary funds.

—Lack of Funds—

Mr. Rock contends that he has difficulty meeting his financial responsibilities, as allegedly evidenced by his financial statement, which shows a shortfall each month. We note that, while Mr. Rock claims not to have any additional funds for the support of his two children, he was able to lend $5,000, without interest, to a Mike Nolan and allow him to live rent free in the house. He relies on his computer print-outs to substantiate his claims of financial difficulties. Simply because Mr. Rock presented a computer printout of his financial status did not require the Master or the court to rely on that printout to establish that the amounts spent by him were reasonable.

—Tax Consequences—

██ Mr. Rock also attempted to introduce evidence regarding the present value of certain assets as reduced by his own calculations of tax consequences to reduce the amount of dollars available for a monetary award to Ms. Rock. In *Rosenberg v. Rosenberg*, 64 Md.App. 487, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985), we held that the husband's future tax liabilities on his retirement plans should not be taken into account at all by the Court because they are too speculative, *i.e.*, the rates may change or income may be sheltered.

Even where tax liabilities are immediate, we held:

"[T]hat taxes should not be taken into account in valuing property before making a monetary award. Rather, the court should consider them as an 'other factor' under [Family Law Article, Section 8–205(a)(10) ]."

*Rosenberg*, 64 Md.App. at 526, 497 A.2d 485.

—Debts—

██ Mr. Rock claims the Master did not consider his debts in making the monetary award. The Master made a careful and detailed analysis of Mr. Rock's financial condition and stated that he reviewed all the evidence. Moreover, he retained the periodic payment sums[4] with two exceptions: (1) he found two periodic payments did not appear to be minimum payments and reduced them to that figure, and (2) he found the debt Mr. Rock claimed to be paying his father was an obligation that he had manipulated in the past. The debts were appropriately considered.

—The Award—

██ The monetary award as recommended by the Master and approved by the trial judge, if anything, was favorable to Mr. Rock. We have often said that there is no presumption in favor of an award that would totally equal-

---

**4.** Examples of periodic payment sums are credit card payments and bank loan payments.

ize the positions of the parties. In this case, the monetary award leaves Mr. Rock two-thirds of the marital property and a substantial length of time to make the payments. Moreover, Mr. Rock has a large number of nonmarital assets. We find no abuse of discretion.

## AUTOMOBILE KITS

The question involving the Marauder investment is more troubling. Mr. Rock invested $50,000 of marital funds in the Marauder venture. He apparently also invested an additional $75,000 of marital funds in research on the project. The business was to manufacture kits to make a Pontiac look like a Ferrari. Although not totally clear from the record, it seems that the manufacturers of the Ferrari took a dim view of this project and enjoined the enterprise. The Marauder investment contained two major benefits. The first was a $50,000 payment to be made to Mr. Rock in July of 1989. Mr. Rock allegedly sold this right to his neighbor, Mansour Akhavain for $5,000.

The second major benefit Mr. Rock received was the right to receive and sell four or five car kits per year. He complains that Ms. Rock is not charged with any of the marital debt that resulted from the purchase. If he means any loss resulting from the investment, he is totally wrong because Mr. Rock was not charged with this loss as a dissipated asset. Mr. Rock also overlooks his own statements. He testified that he recouped the entire investment plus netted an after tax benefit of $13,115. Therefore, this debt is not an issue. If, on the other hand, he means that Ms. Rock's one-third interest should be computed after paying for the kits and his receipt of a commission, he is making a different point. We note that the Master only provided Ms. Rock a one-third interest which could well have taken the cost of the kits and his commission into consideration.

Our problem, however, is not the one raised by Mr. Rock at all. Our problem is that the trial judge simply had

no authority to do what the trial judge did. Save for certain employee benefits, the court cannot give more than one monetary award. *Ward v. Ward,* 52 Md.App. 336, 343, 449 A.2d 443 (1982). In this case, the court made a monetary award of $53,000. The one-third interest in the Marauder investment is an additional monetary award. The court cannot order payment of future benefits on a "when, as and if" basis except in the employee benefits retirement field.

Moreover, the court cannot transfer the property of one spouse to the other. Md.Fam.Law Code Ann. § 8–202(a)(3) (1984, 1990 Cum.Supp.). This order awarded Ms. Rock a "⅓ interest in the funds received by the defendant" which, arguably, awarded the property of Mr. Rock to Ms. Rock. While these issues were never raised, they go to the very core of the order and we cannot affirm.

We cannot ascertain what, if any, value was established for the Marauder investment. If no value was established, it would appear that Ms. Rock failed to bear her burden of proving the value of the asset and the judgment must be affirmed with the deletion of the award of a one-third interest in the asset. If, on the other hand, Ms. Rock did establish a value for this asset, the trial judge should consider, if he deems it appropriate, whether to increase the monetary award to adjust the equities. For the reasons stated, the award of a one-third interest in the Marauder investment must be reversed.

## POST JUDGMENT MOTIONS

Mr. Rock filed post judgment motions to alter or amend judgment and for a new trial. The court denied these motions. In reviewing a failure to grant post judgment motions, the test is whether the trial court abused its discretion. *Taylor v. Benjamin,* 55 Md.App. 597, 601, 465 A.2d 1171 (1983).

One of Mr. Rock's main complaints is, and has been all along, that he would not be earning the same amount in

the future as he was at the time of the hearing on the merits. That may well be so, and if a drop in his income is not self-manipulated, it may be the basis for a modification of support. The evidence proffered in the motion for a new trial, however, was available at the time of the hearing on the exceptions. Mr. Rock made no offer of added testimony at the hearing on the exceptions. Under these circumstances, the court was not required to grant a new trial or alter or amend the judgment. Any error was not that of the court.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.[5]

---

**5.** Although Mr. Rock was successful in one issue, it was not of his doing; hence, we exercise our discretion and make no division of the costs.