*Kaplan v. Kaplan*
No. 3387, Sept. Term, 2018
Opinion by Leahy, J.

**Family Law > Divorce > Alimony > Indefinite Alimony > First-Level Findings**

Based on the lengthy duration of the parties' marriage, we perceive no error in the circuit court's focus on the parties' standard of living during the marriage, rather than the parties' respective pre-marital standards of living. The evidence concerning the parties' pre-marital standards of living bore less relevance compared to the parties' contributions, monetary and non-monetary, to their comfortable lifestyle over the course of their seventeen-year marriage. We therefore hold that the circuit court considered all relevant factors required by Maryland Code (2012 Repl. Vol., 2019 Supp.), Family Law Article ("FL"), § 11-106(b).

**Family Law > Divorce > Child Support > Guidelines for Calculation of Support > Above-Guidelines**

The calculation of a child support award is governed by FL § 12-204. The statute includes a schedule for the calculation of child support, commonly referred to as the "Guidelines," when the parties' combined adjusted actual income ranges from $15,000 to $180,000. FL § 12-204(e). However, in cases where the "combined adjusted actual income exceeds the highest level specified in the schedule . . ., *the court may use its discretion in setting the amount of child support*." FL § 12-204(d) (emphasis added).

**Family Law > Divorce > Child Support > Guidelines for Calculation of Support > Above-Guidelines > Award to Non-Custodial Parent**

As the statutory language reflects—and the legislative history confirms—in exercising its significant discretion in an above-Guidelines case, the trial court may employ any rational method in balancing "the best interests and needs of the child with the parents' financial ability to meet those needs." *Ruiz v. Kinoshita*, 239 Md. App. 395, 425 (2018) (quoting *Unkle v. Unkle*, 305 Md. 587, 597 (1986)). We hold that the discretion accorded the trial court in an above-Guidelines case includes awarding child support to the non-custodial parent, depending on the specific factual scenario before the court.

**Family Law > Divorce > Child Support > Guidelines for Calculation of Support > Above-Guidelines > Award to Non-Custodial Parent**

Given the principles enunciated in Maryland's legislative history and our precedents giving trial courts broad discretion in above-Guidelines cases, as well as the compelling policy rationale articulated by the Supreme Courts of Illinois and Pennsylvania, we will not hamstring our trial courts in the unique circumstances of a particular case when it may be in the best interests of the child to award child support to the non-custodial parent.

Circuit Court for Montgomery County
Case No. 143009FL

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3387

September Term, 2018

_____

RICHARD A. KAPLAN

v.

CHELSEA M. KAPLAN

_____

Fader, C.J.,
Leahy,
Eyler, Deborah S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: November 18, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The Circuit Court for Montgomery County granted an absolute divorce to Richard A. Kaplan ("Husband"), the appellant, and Chelsea M. Kaplan ("Wife"), the appellee. The court awarded Husband, in relevant part, primary physical custody of the children and awarded Wife indefinite alimony and child support. Husband filed a timely appeal and presents four issues for our review, which we have reordered and recast into the following three questions:[1]

1. Did the circuit court err in awarding indefinite alimony by failing to: (a) consider the parties' pre-marital standards of living, and (b) make the requisite projections of Wife's future income?

2. Did the circuit court abuse its discretion in awarding child support to the non-custodial parent?

3. Did the circuit court err in failing to consider Wife's spending habits during the marriage and following separation in its calculation of alimony and child support?

_____

[1] Husband phrased his questions presented as follows:

"1. Did the [c]ircuit [c]ourt improperly award Appellee indefinite alimony without considering material and uncontested evidence regarding the parties' respective standards of living prior to their marriage?
2. Was the [c]ircuit [c]ourt wrong in failing to consider how Appellee's excessive and wasteful spending during the marriage and following separation should impact the level of support Appellee deserves under Maryland law?
3. Did the [c]ircuit [c]ourt have an obligation under the circumstances and facts of this case to require Appellee to contribute more significantly to her own support?
4. If the State of Maryland permits a child support award to a non-custodial parent, must the [c]ourt require an exacting review to ensure that the non-custodial parent receiving child support is contributing to their children's welfare to the maximum extent possible?"

We affirm the judgment of the circuit court. First, we perceive no abuse of discretion in the circuit court's award of indefinite alimony to Wife and determine that the circuit court did not err in its consideration of the factors set forth in Maryland Code (2012 Repl. Vol., 2019 Supp.), Family Law Article ("FL"), § 11-106(b)[2] or its conclusion, under § 11-106(c), that an unconscionable disparity would exist in the parties' relative standards of living when Wife could be expected to reach her maximum earning potential. Second, discerning no error in the court's findings as to Wife's reasonable expenses for her and the children, we hold that the court did not abuse its discretion by obligating Father to pay monthly child support in the amount of $6,500. In reaching this holding, we conclude that, in an above-Guidelines case, the trial court, in exercising its significant discretion, may employ any rational method in balancing "the best interests and needs of the child with the parents' financial ability to meet those needs." *Ruiz v. Kinoshita*, 239 Md. App. 395, 425 (2018) (quoting *Unkle v. Unkle*, 305 Md. 587, 597 (1986)). Finally, we hold that the circuit court properly considered Wife's spending habits as one of many equitable factors in its determinations of alimony and child support.

## BACKGROUND

The parties were married on June 23, 2001 and resided initially in New York City. Wife was completing her master's degree in education and had secured a teaching position. Husband owned a sports management and public relations business. Wife earned less than $40,000 annually after graduating with her masters, and husband earned approximately

---

[2] The 2019 Supplement did not include any substantive changes to FL § 11-106 in effect at the time of the trial in 2018.

$250,000 minus expenses. At the time the parties were married, Wife had little or no savings, and Husband paid off her credit card debt.

In 2002, Husband began law school while continuing to work in his business, and Wife continued working as a teacher. After Husband graduated law school in 2005, he wanted to pursue a judicial clerkship in Washington D.C. Wife was pregnant with their first child and her family lived in New York; so, although she did not want to relocate, she agreed to support Husband's aspirations. The parties moved to Maryland in 2005, where they lived for the remainder of their marriage.

The parties had three children together: "Z", born in 2005, "A", born in 2008, and "B", born in 2011. According to Wife, the parties had an agreement that Husband would be the primary wage-earner and she would stay home with the children. Husband claimed, however, that they "didn't really discuss" their plans and planned "to see how things would go" after the birth of their first child. Wife stayed home with the parties' two children until 2010, when Wife briefly returned to teaching for the 2010-11 school year. In 2011, she became pregnant with the parties' third child and did not return to teaching the following year. Wife did not return to the workforce again until after the parties' separation.

The parties separated on February 26, 2017. At the time of the separation, the parties were residing in the jointly owned family home in Bethesda. Following the separation, Wife continued to reside in the family home, and Husband moved to a rented house.

On February 28, 2017, Wife filed a complaint for limited divorce, or, in the alternative, absolute divorce. On April 18, 2017, Husband filed an answer and counterclaim for limited divorce, or, in the alternative, absolute divorce, custody, and other

3

related relief.  On December 1, 2017, the circuit court ordered the parties to share joint physical custody of the children and further ordered Husband to pay *pendente lite* alimony of $5,000 per month and child support of $6,500 per month.  On January 31, 2018, following a contested custody trial, the circuit court entered a custody, access, and child support order, granting, *inter alia*, sole legal custody and primary physical custody of the children to Husband, ordering weekly access between Wife and the children, and terminating Husband's *pendente lite* child support obligation.

The court then set a three-day merits trial, beginning November 27, 2018, as to the parties' complaints for divorce and related issues, including alimony and child support. The following additional facts were elicited at the trial: Husband was 47 years old, and Wife was 43 years old.  The parties had been married for seventeen years and lived together for almost two years before being married.  Husband was employed as the executive vice president of legal and regulatory affairs and general counsel at a trade association and lobby group.  In 2017, Husband earned a salary of approximately $1.3 million, including a bonus of $250,000.  His employment contract provided that, in 2018, his annual base salary was $1.1 million with opportunities for bonuses.  Wife was employed as a long-term substitute teacher, earning an annual salary of $50,000.

According to the testimony of Husband and Wife, they experienced problems throughout their marriage.  While they sought marriage counseling numerous times, their marital problems continued.  Wife was frustrated by the demands of Husband's work and felt that it interfered with their relationship and his ability to assist in caring for the children. At various points in the marriage, there was suspected and actual marital infidelity by both

4

parties. Wife suffered from depression and panic attacks after learning of Husband's extramarital affair in 2012, which sometimes interfered with her ability to care for the children. Husband testified that Wife's excessive spending was a source of conflict during the marriage, as was her use of marital funds to start a business, which ultimately failed.

At trial, Wife sought an award of indefinite alimony in an amount between $16,000 and $18,000 per month. Wife contended that she could be partly self-supporting, but not entirely self-supporting. She argued that she was entitled to indefinite alimony due to the extraordinary income disparity between the parties, as Husband's income was twenty-six times greater than hers, resulting in an unconscionable disparity in their post-divorce standards of living.

Husband argued that, if alimony was awarded, it only should be for a term of less than three years, rather than an indefinite period, and for an amount less than Wife was requesting. He further averred that Wife could become self-supporting at a certain level, and, after making as much progress as she reasonably can be expected to make toward becoming self-supporting, the respective standards of living of the parties would not be unconscionably disparate.

Wife also requested monthly child support in the amount $7,000 in order to pay her share of expenses for the children, including her housing, food, activities, vacations, clothing and gifts. She argued that she would incur expenses for the children, even though she was not the custodial parent. Husband countered that Wife, as the non-custodial parent, was not entitled to child support, and that her actions during the marriage and since separation would render any such award disguised alimony.

5

After the trial, the judge delivered a lengthy oral opinion on November 30, 2018 and subsequently issued a judgment of absolute divorce that was filed on December 17, 2018. The court awarded Wife indefinite alimony in the amount of $8,500 per month and child support in the amount of $6,500 per month and entered a monetary award in favor of Wife in the amount of $30,000. Husband noted a timely appeal.

We provide additional facts as relevant in the discussion below.

## DISCUSSION

### I.

### Indefinite Alimony

### A. Parties' Contentions

Husband challenges the circuit court's award of indefinite alimony on two bases. First, Husband argues that the circuit court failed to consider the parties' pre-marital standards of living. Second, Husband avers that the circuit court failed to make the requisite projection of Wife's future income before finding an unconscionable disparity between the parties.

#### 1. Pre-Marital Standards of Living

Husband asserts that the circuit court "overlooked the uncontested evidence introduced at trial that the parties entered the marriage already with a substantial earnings disparity." According to Husband, "[h]ad the [c]ourt considered the issue and found this pre-existing disparity to have existed, its [unconscionable disparity] examination . . . would have been fundamentally altered."

Wife counters that the "trial court's award of indefinite alimony was a proper

exercise of its discretion" due to the "unconscionable disparity in the parties' respective lifestyles."  Wife avers that the trial court properly addressed each of the statutory factors set forth in Family Law Article, section 11-106(b).  Wife further contends that Husband "failed to present any evidence [of the parties' pre-marital standard of living] and the evidence . . . does not reflect any differences in such pre-marital lifestyles, but rather reflects that [] both parties' lifestyle increased greatly during the marriage as [Husband's] income increased six-fold . . . allowing the parties to afford their 'upscale' and 'upper middle class' lifestyle during the marriage."

In his reply, Husband asserts that the case should be remanded "to have [the circuit court] evaluate the facts presented under the proper standard in the first instance" and determine whether a disparity existed in the parties' pre-marriage standard of living. Husband contends, without citing to any authority, that "when parties enter the marriage with different lifestyles and earnings, and the party seeking indefinite alimony did not contribute to the economic success of the other party and/or did not curtail their own earning potential as a result of their duties in the marriage, the length of marriage is less meaningful."  Husband then recites the evidence that he contends supports his contention that the parties entered the marriage with an earnings disparity—that the parties purchased their apartment in New York City from money Husband saved prior to the marriage.

## 2.  Projection of Future Income

Husband claims the circuit court failed to "project [Wife's] maximum income—and therefore contribution—as a grant of indefinite alimony requires."  First, Husband avers that the court did not calculate what Wife "could make had she put the appropriate—and

7

indeed, required—time and effort into the process." Husband asserts that "[a]pplying for teaching jobs on the eve of the school year and working for a total of 10 days . . . cannot be a proxy for [Wife] 'making as much progress as can reasonably be expected toward becoming self-supporting.'" Second, Husband asserts that the court's alleged failure to calculate Wife's maximum potential earnings "creates a[] substantial disincentive for her to become as close to self-supporting as possible." Third, Husband contends that the circuit court "never made a serious attempt to probe the implication" that Wife previously made close to $90,000.

Wife counters that "the trial court made all requisite findings in support of such an award [of indefinite alimony], including the necessary projections forward as to [Wife's] future earnings." Specifically, Wife argues that the trial court projected Wife's potential earnings at $88,000 and found that Wife's "standard of living would still be 'fundamentally and entirely dissimilar, and so inferior qualitatively and quantitatively to the standard of living of [Husband] to be morally unacceptable and shocking to the [c]ourt."

**B. Standard of Review**

We will not disturb an alimony award unless we conclude that "the trial court abused its discretion or rendered a judgment that is clearly wrong." *Brewer v. Brewer*, 156 Md. App. 77, 98 (2004) (citation and internal quotation marks omitted). We "'accord great deference to the findings and judgments of trial judges, sitting in their equitable capacity, when conducting divorce proceedings.'" *Malin v. Mininberg*, 153 Md. App. 358, 415 (2003) (quoting *Tracey v. Tracey*, 328 Md. 380, 385 (1992)). We will disturb a trial court's ruling only "where no reasonable person would take the view adopted by the [trial] court,"

8

or "the ruling is clearly against the logic and effect of facts and inferences before the court." *Reynolds v. Reynolds*, 216 Md. App. 205, 219 (2014) (internal quotations and citations omitted).

## C. The Law of Alimony

It is a fundamental principle of Maryland family law that "alimony awards, though authorized by statute, are founded upon notions of equity[.]" *Tracey v. Tracey*, 328 Md. 380, 393 (1992). Because the purpose of alimony is the "rehabilitation of the economically dependent spouse," Maryland favors the provision of rehabilitative alimony for a fixed term to assist the dependent spouse in becoming self-supporting. *St. Cyr v. St. Cyr*, 228 Md. App. 163, 184-85 (2016) (citations omitted). Nonetheless, indefinite alimony is appropriate when fairness requires it. *Boemio v. Boemio*, 414 Md. 118, 143-144 (2010). Indefinite alimony should be reserved, however, for exceptional circumstances, *i.e.* "if the standard of living of one spouse will be so inferior, qualitatively or quantitatively, to the standard of living of the other as to be morally unacceptable and shocking to the court." *Karamand v. Karamand*, 145 Md. App. 317, 338 (2002).

In deciding whether to make an award of alimony and, if made, the amount and duration of the award, the court shall consider the following factors:

> (1) the ability of the party seeking alimony to be wholly or partly self-supporting;
>
> (2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;
>
> (3) the standard of living that the parties established during their marriage;
>
> (4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8-205 and 8-208 of this article;

(iii) the nature and amount of the financial obligations of each party; and,

(iv) the right of each party to receive retirement benefits; and

(12) whether the award would cause a spouse who is a resident of a related institution as defined in §19-301 of the Health-General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.

FL § 11-106(b). Although no formal checklist is required, the trial court must demonstrate that it has considered all necessary factors. *Simonds v. Simonds*, 165 Md. App. 591, 604-05 (2005) (citing *Roginsky v. Blake-Roginsky*, 129 Md. App. 132, 143 (1999)). When it is unclear whether the trial court has considered the factors, we may examine the record as a whole to determine whether the court's findings were based on the statutory factors. *Brewer*, 156 Md. App. at 98-99 (citations omitted).

After considering the factors set forth in subsection (b), a court may award indefinite alimony in exceptional cases if it finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

FL §11-106(c). In this case, the "unconscionable disparity" exception under FL § 11-106(c)(2) is controlling. A finding of unconscionable disparity is a "second-level fact, however, that necessarily rests upon the court's first-level factual findings on the factors, listed in FL section 11-106(b)." *Whittington v. Whittington*, 172 Md. App. 317, 337 (2007).

"Whether the respective standards of living of the parties post-divorce will be unconscionably disparate is a question of fact." *Id.* In determining whether there will be a "post-divorce unconscionable disparity" in the parties' standards of living, a trial court typically begins by examining their respective earning capacities. *Id.* at 338. Accordingly, the unconscionable disparity analysis involves a "fact-intensive case-by-case analysis." *K.B. v. D.B.*, 245 Md. App. 647, 669 (2020) (quoting *Karamand*, 145 Md. App. at 338).

The court must project the parties' relative standards of living at the point in time "when the requesting spouse will have made maximum financial progress." *Whittington*, 172 Md. App. at 338 (quoting *Simonds*, 165 Md. App. at 607). After projecting future income, "[a] trial court must evaluate and compare the parties' respective post-divorce standards of living as a separate step in making its judgment on a claim for indefinite

11

alimony." *St. Cyr*, 228 Md. App. at 189 (citations and quotation marks omitted). The court must make an express finding, supported by the record, that the party is either not self-supporting under FL § 11-106(c)(1) or there would be an unconscionable disparity under FL § 11-106(c)(2). *Roginsky*, 129 Md. App. at 146. "The spouse seeking indefinite alimony bears the burden of proof as to the existence of the prerequisites to entitlement to such an award." *Francz v. Francz*, 157 Md. App. 676, 692 (2004).

Moreover, "[t]he greater the disparity, the more likely that it will be found to be unconscionable." *Ware v. Ware*, 131 Md. App. 207, 229 (2000) (quoting *Roginsky*, 129 Md. App. at 147). This Court has found that a trial court abused its discretion in failing to award indefinite alimony "[i]n cases involving dramatic income disparities after long marriages" and where "the amount of indefinite alimony does not alleviate the remaining disparity." *K.B.*, 245 Md. App. at 670 (quoting *St. Cyr*, 228 Md. App. at 196).

### D. Analysis

Because the decision to award alimony is "not subject to a formulaic resolution," *Whittington*, 172 Md. App. at 341, we consider Husband's contentions of error—(1) failure to consider pre-marital standards of living and (2) failure to make requisite projection of Wife's future income—within the statutory scheme articulated in FL § 11-106. We first analyze Husband's contention that a more thorough inquiry of the parties' pre-marital living standards would have shifted the circuit court's conclusion alongside the factors listed in FL § 11-106(b). After completing our review of the court's first-level findings, we move on to consider the circuit court's finding of unconscionable disparity and whether

12

the difference in Wife's projected future income could bridge the income disparity and resulting standard of living between the parties.

### First-Level Factual Findings under FL § 11-106(b)

The court delivered a lengthy oral opinion on November 30, 2018, that included a detailed and thorough discussion of the findings and analysis required by FL §11-106(b). We summarize the court's findings here.

The circuit court found that Wife was 43 years old at the time of trial and in good health, despite some mental health issues for which she was receiving therapy and medication. Husband was 47 years old and in good health. The parties had been married for 17 years and resided together during the marriage for 15 years. The court deemed the marriage to be one of "significant duration." The court found that there was suspected and actual marital infidelity by both parties. The court noted that Wife's excessive spending was also a source of conflict during the marriage. The court found that both parties "share responsibility for their marriage not working, and for the circumstances that have brought them to this point."

The court determined that the parties had enjoyed an "upscale lifestyle, which could, perhaps, be fairly described as upper middle class, certainly, comfortable as one of them described, and commensurate with the husband's substantial earnings." They took "nice vacations [and] had household help"; their children attended expensive private schools; and "they accumulated significant retirement savings, drove nice cars, and, generally, lived a good lifestyle." They had purchased their home in Bethesda for $1.7 million, and its market value at the time of trial was $1.8 million.

13

As to the monetary and non-monetary contributions to the well-being of the family, Husband was the primary wage-earner, and Wife had contributed financially during the periods she was working. The court found that both parties contributed to the upbringing of the children, though Wife was the primary caregiver who stayed home with the children for most of the marriage, with the assistance of paid childcare providers and housekeepers. The parties' child, "Z," required occupational therapy and Wife took him to his therapy appointments and enrolled him in classes. Wife also arranged playdates, organized school trips, took the children to doctors, dentists and therapists, prepared meals, shopped, bathed the children and read to them at night.

As the children grew older, Wife remained active in the PTA and volunteered at school, taking school trips with the children and taking them to their activities. Husband "worked demanding hours, but was, nevertheless present and provided care to the children consistent with the demands of his employment." Following the parties' separation, Father "continue[d] to provide a significant amount of care for the children when they [were] with him, and [he was] not at work." The record supported that both Husband and Wife "made contributions, both monetary and non-monetary[,] to the care of the children and the well-being of the family that were significant."

The court found that, as far as Wife's employment prospects, she was currently employed full-time as a substitute teacher, earning approximately $50,000 per year. The court determined that she did not require additional time to be qualified for that profession, "although there's some assertion that she could earn more were she to work for the public school system, or embark on some other career," and as the party seeking alimony, she had

14

an obligation to seek "to increase her earning capacity in the future." The court determined that Husband had sufficient income and the ability to pay alimony to Wife while meeting his own needs. Husband was employed as an executive vice president of legal and regulatory affairs and general counsel, earning an income of $1.3 million, which included a $250,000 bonus. Husband maintained health insurance for the children and participated in a 401(k) plan.

As far as Wife's ability to be wholly or partly self-supporting, the court noted that Wife's present income was $50,000 per year. The court stated that "[t]here's evidence to indicate that she's qualified to earn significant income, and that she has, in the past, earned income in excess of what she's claiming now." In 2007, "[Wife] earned close to $90,000, and [Husband] indicates that's reflective of her earning capacity[.]" However, the court concluded that "at this time, I do not think I have sufficient evidence to conclude that she's underemployed, or voluntarily impoverished, or is at present time earning more than the $50,000 figure that she accepts as her earning capacity." After a lengthy review of Wife's financial statement, the testimony, and exhibits introduced into evidence, the court calculated Wife's reasonable needs, based on the expenses incurred for herself and the children when they are with her, as $16,000 per month. The court concluded that, based on Wife's monthly income of $3,076, she was operating at a deficit of $12,924 and, therefore, was not self-supporting. The court found and concluded Wife "has a need for support in alimony and child support in some combination totaling $12,924," which the court rounded to $13,000 a month.

15

Husband does not challenge the circuit court's analysis, summarized above, of the factors set forth in FL § 11-106(b) but contends that the circuit court failed to consider a factor that is not enumerated in the statute—the parties' pre-marital standards of living. Husband relies on *Roginsky v. Blake-Roginsky,* 129 Md. App. 132 (1999), in support of his position that the parties' pre-marital standards of living in this case militated against an award of indefinite alimony. In *Roginsky*, the parties were married for five years and lived together for two of the five years. 129 Md. App. at 147. At the time of trial, husband was 43 years old, and wife was 28 years old. *Id.* Husband was employed by the federal government and owned two rental properties. *Id.* at 143-44. Husband claimed that, prior to their marriage, wife had been poor and surviving by operating a small restaurant in Jamaica, where they had met. *Id.* The trial court found that the parties' marriage was of short duration and their standard of living had been attributable to husband's income. *Id.* at 145. The court awarded indefinite alimony, finding that, though the wife's situation would improve and she would become self-supporting, the parties' standards of living would be unconscionably disparate. *Id.*

On appeal, this Court determined that the trial court had failed to make the necessary projection to the point in time where the wife could be reasonably expected to make maximum progress toward becoming self-supporting. *Id.* at 146. We noted that "[t]he 'standard of living that the parties established during the marriage,'" is particularly relevant with respect to an award of indefinite alimony. *Id.* at 147 (quoting FL § 11-106(b)(3)). We also explained that the parties' pre-marital standards of living may be relevant to determining whether a post-marital disparity will exist:

16

In the majority of unconscionable disparity cases in which awards of indefinite alimony have been affirmed or denials of awards of indefinite alimony had been reversed for abuse of discretion, the standard of living that the parties experienced during the marriage was not one that either had experienced before it, and it was established over time during the marriage, with joint contributions, often with one spouse working and the other attending or raising the children and, therefore, out of the workforce. The standard of living of each party prior to the marriage is a relevant consideration. Because a court is required to consider each and every relevant factor, a gross disparity with respect to the standards of living after divorce might not be justified when the joint enterprise of marriage produced the high standard of living enjoyed by the parties during their marriage, but it might be justified when the disparity in the standard of living pre-existed the marriage. We make it clear, however, that all factors relevant to whether unconscionable disparity exists must be considered.

*Id*. at 147-48.

Very recently, we considered the weight that should be accorded pre-marital standards of living in *K.B. v. D.B.*, 245 Md. App. 647 (2020). We distinguished *Roginsky* and underscored the significance of a longer marriage for calculation of alimony, alongside the other factors. *Id.* at 675-76.

In *K.B. v. D.B.*, the parties had been married for approximately sixteen years at the time of their separation. *Id.* at 662. The trial court found that the parties had enjoyed an "above average" standard of living during their marriage and that the wife had provided primarily nonmonetary contributions to the household, while husband provided monetary contributions. *Id*. Husband had earned approximately $2 million per year, and the parties stipulated that the wife "had the capacity to earn a yearly salary of $35,000.00 within four months of obtaining a position as an administrative assistant." *Id*. at 661-62.

The trial court found that no unconscionable disparity existed in the parties' standards of living following the divorce, and denied the wife's request for indefinite

17

alimony and awarded rehabilitative alimony for a term. *Id*. at 666-67. The trial court focused on the fact that "the respective standards of living of the parties have been greatly disparate since well before the beginning of the marriage." *Id*. at 665. Specifically, the court found that the wife had last been employed in 1998 as a pharmaceutical sales representative. *Id*. The court observed that the husband, however, had a lucrative and well-established business prior to the marriage, which had not increased in value during the marriage. *Id*. at 675.

On appeal, we noted the "pattern in Maryland cases reflecting the implied statutory directive that a long marriage is more likely to result in indefinite alimony." *Id*. at 672 (quoting *Boemio*, 414 Md. at 143) (citing examples of long marriages, lasting between fourteen and thirty years, where an award of indefinite alimony was upheld). We stated that "the parties' relatively long marriage should have been 'a key factor . . . outweighing several of the others listed in FL Section 11-106(b), in determining what is unconscionably disparate.'" *Id*. at 673 (quoting *Boemio*, 414 Md. at 143).

We also distinguished the facts in *K.B.* from *Roginsky*, noting that, unlike *Roginsky*, the parties in *K.B.* had been married for nearly twenty years, and their pre-marital standards of living, though an appropriate factor, "must be considered in the context of all other relevant factors and not given undue weight." *Id*. at 675. We concluded that the trial court had attributed "undue weight" to the parties' pre-marital standards of living "in light of their lengthy marriage, Wife's twenty-year absence from the workforce, and Wife's primary contributions to the household in the form of childcare and home care." *Id*. at 675-76. Ultimately, we concluded "that the difference in Husband's and Wife's living

18

standards are very likely to remain unconsciously disparate even when Wife has made as much progress toward becoming self-supporting as can reasonably be expected," and, therefore, the circuit court had erred in failing to award indefinite alimony. *Id*. at 678.

We return to the case on appeal and note the stark contrast between the length of the marriage here and the marriage in *Roginsky* (only five years, with the parties cohabitating for two of those five, 129 Md. App. at 147). Specifically, the circuit court found:

> The parties have been married for a significant duration. They've been married for over 17 years, 15 of which they resided together. During the [marriage] the parties did have three children, and incurred the effort and expense of raising them thus far. The Court finds that the length of the marriage does militate in favor of an award . . . of alimony.

The court determined that the parties' marriage produced an "upscale" and "upper middle class" standard of living "commensurate with the husband's substantial earnings." The court awarded indefinite alimony on the basis of an unconscionable disparity in the parties' standards of living:

> I find that, even after [Wife] makes as much progress as she can reasonably be expected to make toward becoming self-supporting, her standard of living will be unconscionably disparate from him in the sense of being fundamentally and entirely dissimilar, and so inferior qualitatively or quantitatively to the standard of living of [Husband] as to be morally unacceptable and shocking to the [c]ourt.

In this case, as in *K.B.*, the length of the parties' marriage was a "key factor" in the circuit court's analysis. *K.B.*, 245 Md App. at 673. Based on the lengthy duration of the parties' marriage, we perceive no error in the circuit court's focus on the parties' standard of living during the marriage, rather than the parties' respective pre-marital standards of living. The evidence concerning the parties' pre-marital standards of living bore less

relevance compared to the parties' contributions, monetary and non-monetary, to their comfortable lifestyle over the course of their seventeen-year marriage. We therefore hold that the circuit court considered all relevant factors required by FL § 11-106(b). Having found no abuse of discretion in the circuit court's first-level review, we turn to the circuit court's finding of unconscionable disparity and Husband's contention that the court failed to make the required projection of Wife's future income.

**Second-Level Findings: Projection of Future Income**

A review of the record indicates that the circuit court made the required projection of Wife's future income and then evaluated and compared the parties' respective post-divorce living standards. *See St. Cyr*, 228 Md. at 189.

The court found that Wife was presently employed as a substitute teacher earning $50,000 per year. The court stated that "[t]here's evidence to indicate that she's qualified to earn significant income, and that she has, in the past, earned income in excess of what she's claiming now." In 2007, "[Wife] earned close to $90,000, and [Husband] indicates that's reflective of her earning capacity[.]" The court determined that at present Wife was not self-supporting. The court found that she earned a net income of $3,076 per month, which was $12,924 less per month than her monthly expenses, as calculated by the court. In comparing the parties' respective living standards to determine whether there would exist an unconscionable disparity, the court explained:

> [W]hile income alone is not the sole factor upon which to base a disparity determination, in this case the disparity between the parties' incomes, which is clearly a fact that has the most bearing on what the standard of living [the Husband] can afford to live going forward is

20

enormous. As I mentioned, his income at [$]108,000 per month, when viewed in light of her income of $4,000 per month is vastly greater.

**Even if the Court accepts the argument that her earning capacity is greater than what she is presently earning, I mentioned the argument about her in the past having earned $88,000 a year, there's no reason to believe she will ever be able to enjoy the standard of living that is remotely similar to that which [Husband's] income supports**.

I understand that [Husband] believes that [Wife] is more to blame for the demise of the marriage, and that her conduct and behavior, together with what he asserts is an inadequate contribution to the well-being of the family, render any disparity tolerable from a moral standpoint, at least in his view, and, therefore, not shocking to the [c]ourt or unfair.

I respect his viewpoint. I understand why that's being argued, but I disagree with it. I find that, under the circumstances, given all of the evidence considered in light of the required factors already discussed, including the length of the marriage, the age of the parties and their health, the contributions each has made monetary and non-monetary to the well-being of the family, the circumstances leading to the estrangement of the parties, the conduct of each party [] contributing to the demise of the marriage, each party's respective financial circumstances, and the marital award that I'll be making, **I find that, even after [Wife] makes as much progress as she can reasonably be expected to make toward becoming self-supporting, her standard of living will be unconscionably disparate from [Husband] in the sense of being fundamentally and entirely dissimilar, and so inferior qualitatively or quantitatively to the standard of living of [Husband] as to be morally unacceptable and shocking to the [c]ourt**.

(Emphasis added.)

We note that "[p]ast earnings are the best evidence of future earnings, absent some specific showing to the contrary." *Rock v. Rock*, 86 Md. App. 598, 613 (1991). In *Rock*, we posited that "[e]ven if we assume [Ms. Rock] could make as much as $30,000 per year, that would only be 21.7 percent of Mr. Rock's 1988 income of $138,546.69." *Id*. The trial

court noted that "[i]n keeping with our prior decisions, this difference in income is substantial enough to uphold an award of indefinite spousal support." *Id.*

Maryland's appellate courts have recognized that comparing the relative percentages of each spouse's income is a relevant consideration in determining the existence of unconscionable disparities:

> There are several cases in which Maryland appellate courts found unconscionable disparity based on the relative percentage the dependent spouse's income was of the other spouse's income. *See Tracey*, 328 Md. at 393, 614 A.2d at 597 (28 percent); *Caldwell v. Caldwell*, 103 Md. App. 452, 464, 653 A.2d 994, 999 (1995) (43 percent); *Blaine v. Blaine*, 97 Md. App. 689, 708, 632 A.2d 191, 201 (1993), *aff'd* on other grounds, 336 Md. 49, 646 A.2d 413 (1994) (23 percent); *Rock v. Rock*, 86 Md. App. 598, 613, 587 A.2d 1133, 1140 (1991) (20-30 percent); *Broseus v. Broseus*, 82 Md. App. 183, 186, 570 A.2d 874, 880 (1990) (46 percent); *Bricker v. Bricker*, 78 Md. App. 570, 577, 554 A.2d 444, 447 (1989) (35 percent); *Benkin v. Benkin*, 71 Md. App. 191, 199, 524 A.2d 789, 793 (1987) (16 percent); *Zorich v. Zorich*, 63 Md. App. 710, 717, 493 A.2d 1096, 1099 (1985) (20 percent); *Kennedy v. Kennedy*, 55 Md. App. 299, 307, 462 A.2d 1208, 1214 (1983) (33 percent). Although we do not adopt a standard that unconscionable disparity exists based on a particular percentage comparison of gross or net income, the relative percentages in these cases offer some guidance [ ] here in assessing whether the amount of the indefinite alimony award alleviated adequately the unconscionably disparate situation found to exist in the present case.

*K.B.*, 245 Md. App. at 676 (quoting *Solomon v. Solomon*, 383 Md. 176, 198 (2004)). In *K.B.*, we noted that we were "particularly troubled" by the disparity between Wife's income of $35,000, representing approximately two percent of Husband's income of over one and one-half million dollars, which we observed to be "greater than that referenced in any of the above-cited cases." *Id.*

Here, Wife's current income is approximately four percent of Husband's income. Assuming that Wife's income reached her highest earning capacity around $90,000 per

year, she would earn approximately seven percent of Husband's income. The gross disparity in the parties' incomes is well above the disparities existing in cases in which indefinite alimony awards have been affirmed. We conclude that the circuit court was not clearly erroneous in determining that an unconscionable disparity would exist in the parties' relative standards of living at the time Wife could be expected to reach her maximum earning potential. Accordingly, we perceive no abuse of discretion in the circuit court's award of indefinite alimony to Wife.

## II.

### Child Support Calculation

Husband contends that the circuit court erred in awarding child support to Wife, the non-custodial parent, as there is no precedent in Maryland law for such an award. In addition, Husband asserts that the circuit court failed to require Wife to substantively contribute to her children's welfare. Moreover, Husband argues that, "[i]f child support is available in Maryland to non-custodial parents at all, this Court should make clear that, if a trial court is inclined to take the extraordinary step of ordering a custodial parent to pay child support, the court must conduct an exacting review to ensure that the payee spouse is contributing to the maximum extent possible at all times to their children's support."

In response, Wife counters that the "award of child support . . . in this above-[G]uidelines case was necessary to meet the children's needs[.]" Specifically, Wife avers that the circuit court properly considered the children's needs while in Wife's care and "properly applied [every dollar] to her court-determined reasonable monthly expenses of $16,000." Finally, Wife relies on cases from other jurisdictions in support of her

23

contention that the non-custodial parent may receive an award of child support: *Colonna v. Colonna*, 855 A.2d 648 (Pa. 2004); *In re Marriage of Turk*, 12 N.E.3d 40, 47-48 (Ill. 2014); and *Williamson v. Williamson*, 748 S.E.2d 679 (Ga. 2013).

In his reply, Husband asserts that the Family Law Article only provides discretion to the circuit court "when setting the 'amount' of support, not *whether* support is available in the first instance." (Emphasis in original.) Next, Husband identifies other jurisdictions which allegedly do not authorize a child support award to a non-custodial parent. Husband further avers that Wife's rationale would create a "scheme that treats families in a fundamentally different manner based on their means" if courts had discretion to grant child support to the non-custodial parent in above-Guideline cases.

We have long held that "we will not disturb a 'trial court's discretionary determination as to an appropriate award of child support absent legal error or abuse of discretion.'" *Ruiz v. Kinoshita*, 239 Md. App. 395, 425 (2018) (quoting *Ware v. Ware*, 131 Md. App. 207, 240 (2000)); *see also Frankel v. Frankel*, 165 Md. App. 553, 587-88 (2005); *Rock v. Rock*, 86 Md. App. 598, 607 (1991). "As long as the trial court's findings of fact are not clearly erroneous and the ultimate decision is not arbitrary, we will affirm it, even if we may have reached a different result." *Malin*, 153 Md. App. at 415 (quotations and citation omitted).

As noted by the parties, we are not aware of a reported Maryland decision addressing the calculation of an award of child support to a non-custodial parent in an above-Guidelines case. It is well-established that the cardinal rule of statutory

24

interpretation is to ascertain and effectuate the real and actual intent of the legislature. In construing a statute:

> [W]e give the words their "ordinary and common meaning" and we "avoid constructions that are illogical, unreasonable, or inconsistent with common sense. In addition, [w]e often look to the legislative history, an agency's interpretation of the statute, and other sources for a more complete understanding of what the General Assembly intended when it enacted particular legislation. In so doing, "[w]e may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense.

*Lacy v. Arvin*, 140 Md. App. 412, 421-22 (2001) (quoting *Adamson v. Corr. Med. Serv.*, 359 Md. 238, 251-52 (2000)).

The calculation of a child support award is governed by FL § 12-204. The statute includes a schedule for the calculation of child support, commonly referred to as the "Guidelines," when the parties' combined adjusted actual income ranges from $15,000 to $180,000. FL § 12-204(e). However, in cases where the "combined adjusted actual income exceeds the highest level specified in the schedule . . ., *the court may use its discretion in setting the amount of child support*." FL § 12-204(d) (emphasis added).

Our appellate courts have reviewed the statute and its underlying rationale in numerous cases. To comply with federal law, the General Assembly enacted the Guidelines in 1989. *Voishan v. Palma*, 327 Md. 318, 322 (1992) (citing 42 U.S.C. §§ 651-667 (1982 & 1984 Supp. II) and 45 C.F.R. § 302.56 (1989)). "The federal mandate required that the guidelines be established and 'based on specific descriptive and numeric criteria and result in a computation of the support obligation.'" *Id.* (citation omitted). After

considering several different models, the General Assembly settled on the Income Shares Model. *Id.* (citing Senate Judicial Proceedings Committee, *Bill Analysis*, Senate Bill 49 (1989)). As the Court of Appeals has explained:

> The conceptual underpinning of this model is that a **child should receive the same proportion of parental income**, and thereby **enjoy the standard of living, he or she would have experienced had the child's parents remained together.** Accordingly, the model establishes child support obligations based on estimates of the percentage of income that parents in an intact household typically spend on their children. Consistent with this model, the legislature constructed the schedule in § 12-204(e), which sets forth the basic child support obligation for any given number of children based on combined parental income.

*Id.* at 322-23 (citations omitted) (emphasis added).

While the Guidelines are mandatory, if the parents have a combined yearly adjusted income in excess of $180,000, FL § 12-204(e), the General Assembly "left the task of awards above the guidelines to the Chancellor precisely because such awards defied any simple mathematical solution." *Smith v. Freeman*, 149 Md. App. 1, 19 (2002) (citations omitted).

We note that in an above-Guidelines case, "the court may employ any rational method that promotes the general objectives of the child support Guidelines and considers the particular facts of the case before it." *Malin*, 153 Md. App. at 410 (quotation marks and citation omitted). In exercising its significant discretion, a court "'must balance the best interests and needs of the child with the parents' financial ability to meet those needs.'" *Ruiz*, 239 Md. App. at 425 (quoting *Unkle v. Unkle*, 305 Md. 587, 597 (1986)). "Several factors are relevant in setting child support . . . includ[ing] the parties' financial circumstances, the 'reasonable expenses of the child,' . . . and the parties' 'station in life,

26

their age and physical condition, and expenses in educating the child[ ].'" *Smith*, 149 Md. App. at 20 (quoting *Voishan*, 327 Md. at 329). While noting the court's discretion, "the general principles from which the schedule was derived should not be ignored." *Voishan*, 327 Md. at 328. Indeed, the guiding principle in family law cases that involve children is the children's "indefeasible right" to have their best interests fully considered, *Flynn v. May*, 157 Md. App. 389, 410 (2004), and the boundaries of a court's often broad discretion are tethered to the best interests of the child standard, *see A.A. v. Ab.D.*, 246 Md. App. 418, 422 (citation omitted) (holding "that the circuit court erred, under the circumstances of this case, by precluding Mother from presenting evidence as a discovery sanction without first considering whether that evidence was relevant to the court's determination of the best interests of the children"), *cert. denied*, __ Md. __ (2020), No. 114, Sept. Term 2020 (filed Sept. 25, 2020).

As the statutory language reflects—and the legislative history confirms—in exercising its significant discretion in an above-Guidelines case, the trial court may employ any rational method in balancing "the best interests and needs of the child with the parents' financial ability to meet those needs." *Ruiz*, 239 Md. App. at 425 (quoting *Unkle*, 305 Md. at 597). We hold that the discretion accorded the trial court in an above-Guidelines case includes awarding child support to the non-custodial parent, depending on the specific factual scenario before the court.

Our conclusion is reflected by a majority of our sister states that have had the opportunity to analyze whether a court may order child support payments to a non-custodial parent. In *In re Marriage of Turk*, the Supreme Court of Illinois held, consistent with the

27

principles embodied in its statute, that "a trial court may order the custodial parent to pay child support to the noncustodial parent where circumstances and the best interest of the child warrant it." 12 N.E.3d 40, 49 (2014). In reaching this conclusion, the Court recognized the obvious pitfall in categorially exempting custodial parents from child support obligations:

> [T]he wealthier parent's resources would be beyond the court's consideration and reach even though the visitation schedule resulted in the child actually residing with the poorer parent for a substantial period each week. This could be detrimental to the child psychologically as well as economically, for the instability resulting from having to "live a dual life in order to conform to the differing socio-economic classes of his or her parents" may cause the child to experience distress or other damaging emotional responses. Such an outcome would plainly not serve the child's best interest.

*Id.* at 47-48 (internal citations omitted).

Likewise, in *Colonna v. Colonna*, the Supreme Court of Pennsylvania held that a trial court would abuse its discretion if it "fail[ed] to consider whether deviating from the support guidelines is appropriate, even in cases where the result would be to order child support for a parent who is not the primary custodial parent." 855 A.2d 648, 652 (2004). In reaching this holding, the Supreme Court mirrored the policy rationale later raised in *In re Marriage of Turk*:

> While a downward adjustment in lifestyle is a frequent consequence of divorce that affects both adults and children, we would be remiss in failing to ignore the reality of what happens when children are required to live vastly different lives depending on which parent has custody on any given day. To expect the quality of the contact between the non-custodial parent and the children will not be negatively impacted by that parent's comparative penury vis-à-vis the custodial parent is not realistic. Issuing a support order that allows such a situation to exist clearly is not in the best interests of the children.

28

*Id.* at 651. *See also Grant v. Hager*, 868 N.E.2d 801, 804 (Ind. 2007) ("[A] court could order a custodial parent to pay child support to a non-custodial parent based on their respective incomes and parenting time arrangements if the court had concluded that it would be unjust not to do so and the court had made the written finding mandated by [Indiana law].").

Of course, Husband highlights that certain states prohibit the payment of child support to the non-custodial parent. Generally, however, the terms of these states' statutes restrict the payment of child support from the non-custodial parent. *See, e.g.*, *Rubin v. Salla*, 107 A.D.3d 60, 67 (N.Y. App. Div. 2013) ("Under the [statute's] plain language, only the noncustodial parent can be directed to pay child support."); *Daigrepont v. Daigrepont*, 458 So.2d 637, 638 (La. Ct. App. 1984) (analyzing the Louisiana statute and noting that the phrase 'parent who is to pay' has been consistently interpreted by the jurisprudence to mean the non-custodial parent" and that "[c]hild support is the property of the spouse who is granted custody").

Given the principles enunciated in Maryland's legislative history and our precedents giving trial courts broad discretion in above-Guidelines cases, as well as the compelling policy rationale articulated by the Supreme Courts of Illinois and Pennsylvania, we will not hamstring our trial courts in the unique circumstances of a particular case when it may be in the best interests of the child to award child support to the non-custodial parent.

In the case at bar, Wife was awarded access with the children two weekdays every week and every other weekend, in addition to designated holidays and vacations. In determining the award of child support, the circuit court considered that, although Wife

29

was not the custodial parent, she "has the children with her a significant amount of the time, including time during the day when she has expenses for them, as well as overnights and weekends associated with her time[.]"  The circuit court determined that the appropriate amount of child support in order to meet Wife's needs and expenses associated with the children was $6,500 per month.  The court explained:

> Under the particular facts of this case, I think an award of some child support is necessary to ensure some level of parity between households, which, unless some portion of the award were made alimony, would, perhaps, need to be made in some other form either in the form of a monetary award, or some other aspect of the case that's financial.
>
> I would note that this case, in particular, involves the custodial spouse having a significantly greater income than the non-custodial spouse; second, that this is a far above the guidelines case; and, third, that a requirement that [Husband] pay some amount of child support is not going to result in him not being able to provide an appropriate amount of support for the children when they are with him.
>
> As we discussed, and as the law in Maryland provides, a child is entitled to a level of support commensurate with the parents' economic positions.  And per the Voishan case, and other cases, it's well-established that a child should receive the same proportion of parental income, and, thereby enjoy the same standard of living that the child would have experienced had the child's parents remained together.
>
> The award that the [c]ourt will make takes into account all of the expenses [Husband] has assumed responsibility for in terms of the upbringing of the children without any share of them being borne by [Wife]. It's also predicated upon [Wife] having many if not most categories of expense being commensurate with what the Court has determined are reasonable for [Husband] with particular focus on those categories that were challenged as reasonable throughout the course of this case, and that included attributing a housing expense, meals out expense, vacation expense, entertainment expense, and other expenses for her that are comparable to what the [c]ourt has found to be reasonable for him.

In this case, the circuit court considered the financial circumstances of the parties and the reasonable expenses of the children in determining an amount of child support that would enable the children to maintain the lifestyle and advantages to which they are accustomed. Contrary to Husband's suggestion, the circuit court accounted for Wife's monthly income of $3,076 in determining her expenses and deducted that amount from its calculation of the reasonable monthly expenses of $16,000 for her and the children. Under these circumstances, we discern no error in the court's findings as to Wife's reasonable expenses for her and the children or abuse of discretion in its order obligating Father to pay monthly child support in the amount of $6,500.

## III.

### Consideration of Wife's Spending Habits

Husband contends that the circuit court failed to consider Wife's spending habits in "evaluating [Wife's] reasonable needs or whether she would use a substantial child support award for the minor children's benefit and not merely as disguised alimony." He argues that the circuit court was obligated to analyze Wife's "excessive spending" in the context of FL § 11-106(b)'s "fair and equitable" standard and with respect to the monetary and non-monetary contributions of each party to the well-being of the family under Section 11-106(b)(5). While Husband acknowledges that the circuit court addressed Wife's spending habits, and, in fact, found that Wife had a "spending problem," he complains that the court erred in failing to apply its finding as to Wife's spending problem in its determination of alimony and child support.

31

Wife counters that the circuit court properly considered Wife's spending when fashioning alimony and child support. Specifically, Wife avers that "the trial court provided an extensive discussion of every expense listed in [Wife's] Financial Statement." Further, Wife contends that Husband's initial brief is "devoid of any legal authority" to support a reduction in "current reasonable and necessary living expenses . . . to compensate for overspending in the past."

We disagree with Husband that the court failed to consider Wife's spending in determining alimony and child support and discern no error or abuse by the court.

The record shows that the trial judge considered Wife's spending habits in his analysis of "the circumstances that contributed to the estrangement of the parties" under FL § 11-106(b)(6). The court noted that Wife's spending was a point of contention in the marriage and Husband had testified that her spending was excessive. The court weighed Wife's overspending with the parties' other contentions of "fault" in the marriage and determined that, on balance, both parties "share[d] responsibility for their marriage not working[.]"

With respect to the court's awards of alimony and child support, the court analyzed each of Wife's claimed expenses in her financial statement and reduced the amounts awarded for those expenses that the court deemed excessive. For example, the court found that Wife's claimed monthly expense for Amazon was "exorbitant" and allocated $500 per month to those expenses, rather than $1,019 claimed by Wife. The court also found that Wife had failed to demonstrate her actual out-of-pocket costs for mental health therapy, and adjusted that expense to the amount claimed by Husband. With respect to school

32

expenses and costs associated with transporting the children to their activities, the court reduced the reasonable amounts of those expenses by half. The court found Wife's claimed expenses for meals and entertainment, vacations, videos and theaters, clothing, water and sewer to be excessive, and reduced those expenses to the costs submitted by Husband, which the court found to be more reasonable. Ultimately, the court concluded that the total reasonable monthly expenses for Wife and the children to be $16,000 per month, whereas Wife had claimed a total of $20,387 in monthly expenses.

With respect to Wife's request that the child support award be retroactive to January 1, 2018, the court noted that, during the period for which she was seeking retroactive support, she was not working and spending "as if money were no object" and denied her request.

The court also considered Wife's spending habits in the context of its determination of the marital property award:

> As far as there's a request by [Wife] for a disproportionate award of the marital property to account for the fact that [Husband] has paid for all of his counsel fees in conjunction with this case using marital assets, while she's been compelled to borrow from her parents to fund the significant portion of her fees.

> I can understand the argument, but I think there are some countervailing considerations. There's some basis in the evidence to conclude that her spending was an issue in the marriage, including her spending during the post-separation period, and that, because it was at the level that it was, there was notably less marital property to be divided upon divorce than there, otherwise, would have been to divide.

> I've reviewed the summaries of her expenditures, particularly the one illustrating her expenditure of some $75,000 on clothing since the separation, and I believe it's fair to conclude she has a spending problem, particularly

33

when it comes to clothes. I would note that, from a review of that document, there [were] some [] times when she made almost daily purchases[.]

The court addressed Wife's use of marital funds to start a business, her failure to apply insurance proceeds to repairs for the house, her failure to use agreed-upon fees to pay her attorneys, her failure to submit medical bills to insurance for reimbursement, and her "excessive" spending on travel and entertainment. In light of Wife's spending during the marriage, the court denied Wife's request for an unequal division of the marital assets.

We hold that the circuit court properly considered Wife's spending habits as one of many equitable factors in its determinations of alimony and child support, and we perceive no clear error in the calculations upon which those awards were based.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

34